IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| GOD'S STOREHOUSE TOPEKA CHURCH | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-4014 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**VERIFIED PETITION TO QUASH INTERNAL REVENUE SERVICE THIRD-PARTY SUMMONS**

COMES NOW Petitioner God's Storehouse Topeka Church ("God's Storehouse" or "Church"), by and through counsel Kriegshauser Ney Law Group, and respectfully petitions this Court to quash the improper and invalid administrative summons issued by the Internal Revenue Service ("IRS") to Kaw Valley Bank. In support of its Petition, God's Storehouse states the following.

**NATURE OF THE MATTER**

1. This matter involves an IRS examination into God's Storehouse's status as a church for federal tax purposes. As detailed below, God's Storehouse has volunteered ample evidence for the last nine months to prove its qualification as a church and to resolve the tax concerns raised by the IRS (see list of Church-provided information at Paragraph 35). The IRS has not provided a substantive response to any of these materials and now seeks to access all financial transactions of the Church through an administrative summons to the Church's bank, Kaw Valley Bank. The information summoned is not necessary to assess the tax concerns originally raised by the IRS and the manner in which the IRS initiated this examination suggests

that the IRS has exceeded the proper bounds of its examination without justification such that Petitioner now requests relief from the Court through this Petition.

## JURISDICTION AND VENUE

2. On February 8, 2022, IRS Agent Kesroy Henry issued an administrative summons (the "Summons") directed at Kaw Valley Bank with the approval of his supervisor. It is currently unknown when Kaw Valley received the Summons, but the Petitioner received it the morning of February 14, 2022. A true and correct copy of the Summons as it was delivered to Petitioner is attached hereto as **Exhibit A**.

3. 26 U.S.C. § 7609(h) confers jurisdiction upon the District Court in which the person to whom an administrative summons issued by the IRS is directed as follows:

> The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), (f), or (g). An order denying the petition shall be deemed a final order which may be appealed.

26 U.S.C. § 7609(h).

4. According to the Office of the Kansas Secretary of State, Kaw Valley Bank's Registered Address is 1110 N Kansas Ave., Topeka, KS 66608. Consequently, this is also the address to which the Summons was sent. *See* Exhibit A. Accordingly, it is clear that Kaw Valley Bank both resides and can be found in the District of Kansas.

## THE PARTIES

5. Petitioner God's Storehouse Topeka Church is a not-for-profit corporation incorporated in the State of Kansas. Its main address is 2111 SW Chelsea Dr., Topeka, KS 66614.

6. Respondent United States of America, Internal Revenue Service of the Department of Treasury is a federal government entity with agencies and offices throughout the United States and is served both through the U.S. Attorney General (950 Penn. Ave., N.W., Washington, DC 20530-0001) pursuant to Fed. R. Civ. Pro. 4(i)(1)(B) and the U.S. Attorney's Office for the District of Kansas (444 S.E. Quincy, Suite 290, Topeka, KS 66683) pursuant to Fed. R. Civ. Pro. 4(i)(1)(A).

7. IRS Agent Kesroy Henry's mailing address is Department of the Treasury, Internal Revenue Service, Tax Exempt and Government Entities, Exempt Organizations Examinations, 7850 SW 6th Court/MS 7954, Plantation, FL 33324, and he can be reached through email or fax to (888) 981-9387. A copy of this Petition will be sent by mail postage prepaid, fax, and email.

8. Kaw Valley Bank is the party summoned. It is a Kansas bank registered with the Kansas Secretary of State with a resident agent: Craig Heideman, 1110 N. Kansas Ave., Topeka, KS 66608. A copy of this Petition will be sent by mail postage prepaid as well as by email.

**FACTUAL HISTORY TO SUMMONS**

9. Pastor Rick Kloos has served as a Christian minister for more than 30 years. In 2009, Pastor Kloos and his wife, Pastor Pennie Kloos, founded God's Storehouse to reach the people of Topeka, Kansas. Since then, the Church has operated as a Bible-believing Christian church with a congregation that regularly worships together.

10. To further its mission to love God and love people, the Church operates a thrift store ministry. The Church's thrift store accepts donated goods and sells them to the public, a long-standing and legally permissible practice for many tax-exempt, religious organizations. It

also provides free clothing and furniture to individuals with significant financial hardships or other challenging life situations.

11. The IRS initiated this examination after Pastor Kloos's successful campaign for the Kansas legislature in 2020, when he unseated Democratic incumbent Anthony Hensley, the longest-serving legislator in Kansas history. As part of his campaign, Pastor Kloos independently created and distributed campaign signs which stated: "RICK KLOOS KANSAS SENATE" and "Founder of God's Storehouse."

12. Local press coverage,[1] which quoted Pastor Kloos's political opponent, developed an argument that Pastor Kloos' reference to himself as the founder of the Church may constitute impermissible political endorsement by the Church.[2] Pastor Kloos's campaign created and paid for these signs wholly independently of God's Storehouse, and the use was solely for identification purposes.[3] The signs were reviewed by the State of Kansas Governmental Ethics Commission prior to display, and the Commission rightly opined that the signs provided voters with valuable context "regarding who you are and the nonprofit with which you are associated" and approved them for use in the campaign.

13. On September 24, 2020, the Freedom from Religion Foundation ("FFRF") filed a complaint with the IRS[4] alleging electioneering violations by the Kloos campaign. The FFRF

---

[1] *See, e.g.*, Andrew Bahl, "'I've never seen anything like this': Kansas Senate candidate under fire for mixing religion, politics," The Topeka Capital-Journal (Sep. 25, 2020) *available at* *https://www.cjonline.com/story/news/politics/state/2020/09/25/lsquoirsquove-never-seen-anything-like-thisrsquo-kansas-senate-candidate-under-fire-for-mixing-relig/114879660/* (last accessed Feb. 18, 2022).

[2] This argument is unavailing and irrelevant to this case. The sign utilized the Church's name as a noun to identify the Church as a legal entity and not in any manner as a trademark to identify the source of services or goods.

[3] Public campaign finance records verify this expenditure. *See* *http://ethics.ks.gov/CFAScanned/Senate/2020ElecCycle/SLinks2020EC.htm* (last accessed Feb. 21, 2022).

[4] *See* "FFRF reports to IRS Kansas senatorial candidate's religious politicking," Freedom from Religion Foundation Website (Sep. 24, 2020) *available at* https://ffrf.org/news/news-releases/item/37917-ffrf-reports-to-irs-kansas-senatorial-candidate-s-religious-

posted a copy of its complaint on its website. Although the complaint is no longer linked on the FFRF website,[5] a copy is attached as **Exhibit B** to this Petition. The complaint enclosed screenshots of Pastor Kloos's campaign signs and erroneously stated that Pastor Kloos planned to hold a campaign event at another local church. The IRS has not produced this complaint or acknowledged its existence.

14. On the basis of this complaint, the IRS initiated this examination on the IRS Commissioner's asserted "reasonable belief" that the Church may not be operating as a tax-exempt organization and because of "concerns . . . that [the Church is] operating as a thrift shop rather than as a church."

15. The Summons at issue to Kaw Valley Bank demands production of: (1) Monthly statements; (2) Deposit offsets (front and back); (3) Deposit tickets; (4) Cancelled checks (front and back); (5) Signature cards; (6) Debit and credit memos; (7) Loan applications, including lines of credit, and all documents related to loan(s); (8) Financial statements; (9) Safe deposit box entry cards; (10) Cashier's checks and applications; (11) Money orders; (12) Foreign and domestic letters of credit and wires of funds along with related documents disclosing source of funds and, for wires of funds, the destination of the funds along with any related correspondence; (13) Agency agreements and correspondence; and (14) Closing transaction on the account (check, wire transfer, etc. regardless of amount). *See* Exhibit A, Attachment A (emphasis included). The Summons directs that all of these documents be produced from a period of January 1, 2019 through December 31, 2020.

---

politicking?utm_source=SocialMedia&utm_medium=Twitter&utm_campaign=IRSKloosSeptember242020&utm_content=PR (last accessed Feb. 18, 2022).

[5] *See* "Page not Found" Freedom from Religion Foundation Website (Sep. 24, 2020) *available at* https://ffrf.org/uploads/luploads/legal/GodsStorehouseandAPlaceCalledThereChurchKS.pdf (last accessed Feb. 18, 2022).

**FACT AND LEGAL BASIS FOR QUASHING SUMMONS**

16. The Internal Revenue Code makes it clear that the IRS must at all times use the summons authority in good faith pursuit of a congressionally authorized purpose. The IRS has the burden of showing that its investigation is pursuant to a legitimate purpose and that the information sought is relevant and material to such legitimate purpose.

17. Upon information and belief, the IRS is using its summons powers in a manner inconsistent with good faith pursuit of a congressionally authorized purpose.

18. A party receiving a summons from the IRS is entitled to contest it in an adversarial enforcement proceeding. *Donaldson v. United States*, 400 U.S. 517, 525 (1971). These proceedings are ordinarily summary in nature.

19. When enforcement of an IRS summons is challenged, the government must satisfy all of the following elements: (i) that the summons was issued for a legitimate purpose; (ii) that the inquiry may be relevant to that purpose; (iii) that the information sought is not already in possession of the IRS; and, (iv) that the government has complied with the administrative steps required by law with respect to the issuance and service of a summons. *United States v. Powell*, 379 U.S. 48, 57-58 (1964).

20. If the government satisfies its *prima facie* burden, the taxpayer retains the right to challenge the IRS's summons by disproving one or more of the *Powell* requirements or by demonstrating that enforcement of the summons will result in abuse of the Court's process. *See United States v. Rockwell Int'l,* 897 F.2d 1255, 1262 (3d Cir. 1990); *see also Wheeler v. United States*, 459 F. Supp. 2d 399, 402 (W.D. Pa. 2006).

21. The Summons at issue is invalid and should be quashed because it fails at least three of the four *Powell* criteria for enforcement of an administrative summons issued by the Internal Revenue Service.

22. Additional restrictions on the IRS's ability to conduct tax examinations and inquiries into "churches" are imposed on the IRS pursuant to 26 U.S.C. § 7611.

23. First, 26 U.S.C. § 7611(a)(2) requires that "an appropriate high-level Treasury official reasonably believes (on the basis of facts and circumstances recorded in writing) that the church—

> (A) may not be exempt, by reason of its status as a church, from tax under section 501(a), or
>
> (B) may be carrying on an unrelated trade or business (within the meaning of section 513) or otherwise engaged in activities subject to taxation under this title."

26 U.S.C. § 7611(a)(2).

24. Even after the 26 U.S.C. § 7611(a)(2) reasonable belief factors are met, any such inquiry or examination is to remain restricted after additional administrative notice requirements are met "*only* – (A) in the case of church records, *to the extent necessary to determine the liability for, and the amount of, any tax imposed by this title*, and (B) in the case of religious activities, *to the extent necessary to determine whether an organization claiming to be a church is a church for any period*." 26 U.S.C.§ 7611(b)(1) (emphasis added).

25. Accordingly, the burden for the Summons at issue is higher than the mere application of the *Powell* factors.

**A. The Information Sought Is Beyond "To The Extent Necessary" to Make a Determination under 26 U.S.C. § 7611(b)(1).**

26. The Church Audit Procedure Act, codified at 26 U.S.C. § 7611, circumscribes the IRS's ability to conduct investigations of churches. When conducting a church tax examination, the IRS may examine church records only "to the extent necessary" to determine a tax liability and may likewise examine a church's religious activities only "to the extent necessary" to determine whether an organization is a church. § 7611(b)(1)(A)-(B).

27. Two circuit courts have considered whether "to the extent necessary" in section 7611 places a higher burden on the IRS when examining churches than it faces when requesting information from other entities. *See United States v. Church of Scientology Western United States*, 973 F.2d 715 (9th Cir. 1992); *United States v. Church of Scientology of Boston, Inc.*, 933 F.2d 1074 (1st Cir. 1991). Both concluded that the phrase restricts the scope of the government's inquiry. *Id.* The circuits reasoned that "to the extent necessary" imposes upon the IRS the burden of showing "actual necessity for the documents it seeks, not merely alleging relevance." *Scientology Western*, 973 F.2d at 717. As then-Judge Breyer wrote for the First Circuit, the phrase "requires the IRS to explain why the particular documents it seeks will *significantly* help to further the purpose of the investigation." *Scientology Boston*, 933 F.2d at 1079 (emphasis added). To meet this burden, the IRS must explain the purpose behind its requests and show how each category of requests falls "directly and logically within [the] proper scope" of the examination. *Scientology Western*, 973 F.2d at 721.

28. The Ninth Circuit found that the IRS satisfied this burden when an agent "testified in detail as to how each category of documents would significantly help to further the valid

purposes behind the IRS investigation." *United States v. C.E. Hobbs Found. For Religious Training & Educ., Inc.*, 7 F.3d 169, 172 (9th Cir. 1993).

29. In the case at bar, the IRS has failed to show how the documents it seeks are necessary to its investigation and directly and logically within the proper scope of the investigation. Furthermore, the breadth of the Summons cannot be supported "to the extent necessary" all the items sought are needed to make a proper determination under Section 7611.

30. The Church here is unquestionably a "church" under applicable tax law and IRS regulations. The applicable Tax Code provision is Section 170. The term "church" is not specifically defined, however, in light of First Amendment protections for religious assembly and practices in the United States.

31. In order to both respect applicable First Amendment parameters and to carry out tax administration, the IRS has prescribed fourteen characteristics generally attributed to churches to determine whether an organization is a "church" for federal tax purposes. The characteristics include a distinct legal existence, a recognized creed and form of worship, a definite and distinct ecclesiastical government, a formal code of doctrine and discipline, a distinct religious history, a membership not associated with any other church or denomination, an organization of ordained ministers, ordained ministers selected after completing prescribed courses of study, a literature of its own, established places of worship, regular congregations, regular religious services, Sunday schools for the religious instruction of the young, and schools for the preparation of its members. *Foundation of Human Understanding v. Commissioner*, 88 T.C. 1341, 1357-58 (1987) (quoting Internal Revenue Manual 7(10)69, Exempt Organizations Examination Guidelines Handbook 321.3(3) (Apr. 5, 1982)).

32. The IRS uses these criteria along with other facts and circumstances to determine whether an organization is a church for federal tax purposes. *Id.* Courts generally treat the above criteria as a descriptive guide to the characteristics of a church rather than a mechanical test. *See, e.g.*, *Foundation of Human Understanding v. United States*, 614 F.3d. 1383, 1388 (Fed. Cir. 2010) (noting that even courts that rely on the fourteen criteria apply them "flexibly"); *Spiritual Outreach Soc'y v. Commissioner*, 927 F.2d 335, 339 (8th Cir. 1991) (describing the criteria as "a guide, helpful in deciding what constitutes a church"); *United States v. Jeffries*, 854 F.2d 254, 258 (7th Cir. 1988) (finding some of the IRS's criteria "helpful" to distinguish churches from other religious enterprises and other criteria "relatively minor").

33. Each criterion need not be present for an organization to be a church. *Foundation of Human Understanding v. Comm'r*, 88 T.C. at 1358 ("few traditional churches could meet all of the criteria"). And courts consider some criteria more important than others when distinguishing between churches and other religious enterprises. *Spiritual Outreach*, 927 F.2d at 339. Most important are the existence of an established congregation, the provision of regular religious services, and the dissemination of a doctrinal code. *Id.*

34. Courts also employ the associational test when determining whether an entity is a church under the Code. Like the most important of the above criteria, the associational test looks to whether an organization fulfills its religious purpose by regularly providing opportunities for congregants to worship together. *Church of Eternal Life & Liberty, Inc. v. Commissioner*, 86 T.C. 916, 924 (1986) (asking whether an entity "serve[s] an associational role in accomplishing its religious purposes"). This is because "[a]t a minimum, a church includes a body of believers or communicants that assembles regularly . . . to worship." *American Guidance Foundation v. United States*, 490 F. Supp. 304, 306 (D.D.C. 1980). Put differently, an organization is a church

under the associational test if it regularly "create[s], as part of its religious activities, the opportunity for members to develop a fellowship by worshiping together." *Foundation of Human Understanding*, 614 F.3d at 1389.

35. In good faith and in compliance with the IRS, the Petitioner has *voluntarily* provided the following documents to the IRS, all clearly reflecting the Church's legitimate status as a church and obviating the need for additional necessary information to make this determination:

- governing documents;
- a detailed history of the organization;
- a summary of its religious beliefs;
- detailed information concerning its regularly scheduled worship services including photos;
- service dates for the last two years and order of worship;
- church member lists;
- tithing donation receipt records;
- pastoral biographical and educational information including ordination records and licensing;
- responsive information providing the number of funerals administered during 2019 and 2020 with sample obituaries and service documents;
- extensive notes from pastors' sermon and Bible studies conducted during the 2019 and 2020 fiscal years;
- history of its thrift store ministry selling donated home goods and clothing;

- sample family assistance applications documenting the free provision of goods and clothing to those in need during 2019 and 2020;
- minutes of 2019 and 2020 board meetings;
- compensation and housing allowance resolutions for the pastors;
- all payroll reports;
- IRS Form 941s;
- copies of all leases and mortgages;
- letters from the Church's bank, insurance carrier, and accounting firm supporting the Church's ongoing operations as a Christian church;
- all sale, historical, and financial information associated with the sale of coffee and cookies at the thrift store and church, including why the church believes the activity is not operated for profit and contributes importantly to its exempt purposes[6]; and
- a detailed explanation of why Pastor Kloos's independent identification of himself as the "founder of God's Storehouse" on a political campaign yard sign, which was vetted and approved in advance by the Kansas Ethics Commission and done entirely independent of, and without any assets or financial involvement of the Church, did not constitute impermissible political campaign activity by the Church.[7] Further, the IRS has full public access to the financial transactions

[6] While the Church asserts that the activity is not subject to any liability for unrelated business income tax arising from its activities, the Church has provided the Service with *all* of the financial information necessary to assess any income tax liability in this area.
[7] Section 501(c)(3) restricts organizations exempt under that section from "participat[ing] in, or interven[ing] in, any political campaign." However, under IRS Rev. Rul. 2007-41, the "political campaign intervention prohibition is not intended to restrict free expression on political matters by leaders of organizations speaking for themselves, as

conducted by the Kloos campaign[8] and can easily verify that all yard signs were purchased by the campaign.

36. Additionally, the Church invited the IRS to attend a worship service and to meet with Pastor Kloos and the Church's board. The IRS did not accept this invitation.

37. Given the detailed information already provided, the IRS has ample data to determine whether the Petitioner qualifies or not as a "church" without obtaining all of the information sought in the applicable third-party summons.

38. Furthermore, the Summons itself is overly broad, requesting signature cards and access to any safe deposit boxes. These items are not necessary for the IRS' determination of "church" status.

39. The above information is more than adequate for the IRS to determine the Petitioner's status as a "church." Upon information and belief, the third-party Summons at issue is not issued "to the extent necessary" to make such a determination.

**B. The Examination Lacks a Legitimate Purpose.**

40. The IRS initiated this church examination on the IRS Commissioner's asserted "reasonable belief" that the Church may not be operating as a tax-exempt organization and more specifically because of a "concern that [the Church] is operating as a thrift shop rather than as a church." But this expressed concern constitutes a legally invalid basis for a church examination.

---

individuals." In Situation 3, Rev. Ruling 2007-41 explicitly permits a candidate to use the name of a nonprofit organization on a campaign sign. Like Pastor Kloos's sign, the nonprofit's name in Situation 3 was used solely to identify an individual in terms of his role in the local community. The sign was not paid for or published by the 501(c)(3) and did not constitute an endorsement by the 501(c)(3). Because Pastor Kloos created the sign in his individual capacity, with campaign funds, solely to identify himself as the founder of God's Storehouse, the Church did not in any way intervene, endorse, or otherwise participate in the Kloos campaign.

[8] All Kansas state campaigns must file campaign finance reports with the Kansas Ethics Commission including, but not limited to, contributor and expenditure information. *See* *http://ethics.ks.gov/CFAScanned/Senate/2020ElecCycle/SLinks2020EC.htm* (last accessed Feb. 21, 2022).

More specifically, the sale of donated secondhand household goods and clothing items to the public has been, and continues to be, a longstanding and historical tradition of many Christian churches, associations of churches, and similarly religiously-motivated ministries throughout the United States.

41. Venerable churches and religious groups such as the Salvation Army, Catholic Charities, Society of St. Vincent de Paul, Lutheran Community Services; Goodwill Industries (Methodist), Habitat for Humanity (nondenominational Christian organization, and Deseret Industries (Church of Jesus Christ of Latter-Day Saints) all engage in substantial thrift store activities. Indeed, Congress has consistently, in both the enactment of the unrelated business income tax and through other actions, affirmed this practice.[9] Likewise, long-standing IRS rulings support such practice as a legally permissible activity of all 501(c)(3) organizations.[10] In fact, the IRS has never ruled that thrift store activities are an impermissible activity of a church or that the receipt and sale of donated goods is somehow potentially subject to income tax liability by a 501(c)(3) organization.

42. Based on the above initial considerations, the Church's legally permissible thrift shop activity does not constitute a legally valid reason for commencing a church examination as to whether an organization is exempt as a church under 501(c)(3) under Section 7611(a)(1). The IRS therefore should not proceed with its examination of the Church, in light of this legally defective asserted basis for an IRS church examination.

---

[9] Tax exempt organizations are generally required to pay taxes on unrelated business income. However, the Internal Revenue Code does not consider the "selling of merchandise, substantially all of which has been received by the organization as gifts or contributions" an unrelated business for tax-exempt organizations. IRC § 513(a)(3).
[10] *See, e.g.*, Rev. Rul. 71-581.

43. In advance of the IRS examination and in a good faith effort to resolve these issues, the Church provided extensive information and records under a sworn declaration of its pastor and president, evidencing that the Church satisfies the most important characteristics of churches as discussed above: it has an established congregation; it regularly conducts religious services; and it disseminates its Christian teachings, etc. within the meaning of section 170(b)(1)(a)(i). The Church also provided detailed explanations and supporting materials addressing all fourteen criteria the IRS utilizes to determine whether an organization is a "church."

44. Notwithstanding this conclusive information, the IRS continues to assert that it has a "reasonable belief on the basis of facts and circumstances recorded in writing" that the Church may not be "tax exempt under 501(c)(3) of the Code as a church."

45. Section 7611(b)(3)(iv) requires the IRS provide a copy of "all documents which were collected or prepared. . . for use" as the basis for its IRS' reasonable belief that the Church does not qualify as a church under section 501(c)(3).

46. In the IRS Notice of Church Examination dated September 7, 2021, the IRS included copies of some of these materials. Taken individually or collectively, none of these materials support an objectively sufficient "facts and circumstances" finding of any reasonable belief that the Church is not organized or operated as a church with the IRS definition. Quite the opposite: the available materials amply provide that the entity is a church.

47. The only "fact" that has been asserted by the IRS that the Church does not qualify as a church is that it does not have a current description of its weekly worship services on the internet.

48. Such minor point hardly amounts to any objectively reasonable conclusion that Church is not a church. Moreover, it completely mischaracterizes the facts. The Church's landing and home page[11] of its website prominently states "God's Storehouse is a church that operates a thrift store . . . Our vision is to love God and love people; by doing so we hope to make a lasting impact in the community in which we serve." The Church's landing and home page to its website also includes a pop-up which displays for all viewers when arriving on the page that invites the public to "JOIN US IN BIBLE STUDY" with an email address for more information. The Church has submitted ample materials communicating that it meets regularly for worship services and otherwise acts entirely as a religious house of worship. Thus, the IRS's assertion that the materials it provided constitute the requisite "reasonable basis" for asserting that the Church is not tax exempt as a church under section 501(c)(3) is faulty.

49. Rather, upon information and belief, Petitioner believes that this church examination was initiated at the behest of Pastor Kloos' political opponents through the FFRF as they claim on their website. Petitioner requested a copy of this complaint letter and any other documentation on which the IRS relied to open its examination under the Freedom of Information Act and 26 U.S.C. § 7611(c)(A)(iv) on October 13, 2021, December 21, 2021, and January 5, 2022. A copy of the FFRF letter was noticeably absent from the documents included with the IRS's Notice of Examination.

50. On February 11, 2022, the IRS refused to release a copy of the FFRF Letter pursuant to the Petitioner's demands, claiming that the documents attached to the Notice of Examination "are copies of all documents which were collected or prepared by the IRS for use in

[11] *See* https://www.gshtopeka.org/ (last accessed Feb. 21, 2022).

such examination and the disclosure of which is required by the Freedom of Information Act, as supplemented by section 6103. The Service has therefore satisfied all statutory and administrative requirements to conduct a church tax examination under section 7611."

51. Upon information and belief, the FFRF Letter demonstrates the improper purpose under which the church examination here is being conducted – namely, that the IRS is carrying out political retribution goals rather than legitimate tax enforcement and compliance.

**C. The Summons was Issued Pursuant to a Flawed Administrative Procedure.**

52. Section 7611 also imposes additional administrative steps on the IRS when undertaking a church examination. One such administrative requirement is the examination notice. The Service must give the church written notice, by certified or registered mail, of its intent to examine church records. The notice must include: (1) A copy of the inquiry notice previously given to the church; (2) A description of all church records and activities that the Service seeks to examine; (3) An offer of a pre-examination conference; and (4) Copies of all documents that were collected or prepared by the IRS for use in such examination and the disclosure of which is required by the Freedom of Information Act. *See* 26 U.S.C. § 7611.

53. Because they continually refuse to provide a copy of the FFRF Letter that initiated this examination, the IRS has failed to comply with 26 U.S.C § 7611(b)(3)(A)(iv). While it is unclear why the IRS refuses to acknowledge the existence of the FFRF Letter, it is reasonable to infer that the IRS has a questionable basis for initiating this church audit, which may be rooted in anti-religion animus (as reflected in FFRF's name and mission), and therefore the IRS is seeking more information than necessary to make its determinations.

54. Furthermore, the Notice of Examination was signed by Sunita B. Lough, the IRS' Tax Exempt and Government Entities Division Commissioner. Under 26 U.S.C. § 7611, the

approval of a "high level Treasury official" is required to initiate a church audit or examination. It is presently unclear, as a legal matter, whether the IRS Tax exempt and Government Entities Commissioner qualifies as the proper person to approve a church examination such as the one at issue.

55. This immensely important definitional question has been on the IRS' Priority Guidance Plan for many years, without any resulting answer. The IRS' failure to timely address such matter has caused problems for many churches, through lack of clarity as to religious organizations' legal rights and protections. Such problem is of constitutional import, given all churches' religious liberty protection under the First Amendment from government intrusion. Based on these problems, the IRS should not carry out any examination of the Church absent requisite clarification and should not issue summonses such as involved here. This objection has been preserved in the Petitioner's correspondence with the IRS on November 19, 2021.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Enter an Order quashing the third-party summons to Kaw Valley Bank in its entirety.

b. Alternatively, modify the summons excluding all information deemed not to be necessary by the Court; and

c. Award such other and further relief as to which Plaintiffs may be entitled.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment of the United States Constitution.

It is respectfully requested that the jury trial be held in Wichita, KS given its geographic proximity to all plaintiffs.

Respectfully submitted this 24th day of February 2022.

**KRIEGSHAUSER NEY LAW GROUP**

/s/ Ryan A. Kriegshauser
Ryan A. Kriegshauser, KS Bar No. 23942
KRIEGSHAUSER NEY LAW GROUP
15050 W. 138th St., Unit 4493
Olathe, KS 66063
(913) 303-0639
ryan@knlawgroup.com

Ryan Oberly*
WAGENMAKER & OBERLY
53 W. Jackson Blvd., Ste. 1734
Chicago, IL 60604
(312) 626-1600
ryan@wagenmakerlaw.com

ATTORNEYS FOR PETITIONER

*Admission for Pro Hac Vice forthcoming.

**VERIFICATION**

I declare under penalty of perjury that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true.

Dated: 2-24-2022

Pastor Rick Kloos
God's Storehouse Topeka Church