IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GOD'S STOREHOUSE TOPEKA CHURCH,      )
                                     )
            Petitioner,              )
                                     )
v.                                   )          Case No. 22-cv-04014-DDC-TJJ
                                     )
UNITED STATES OF AMERICA,            )
                                     )
            Respondent.              )

## REPORT AND RECOMMENDATION

## NOTICE

Within fourteen (14) days after being served with a copy of this Report and

Recommendation, any party, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), may

file written objections to this Report and Recommendation. A party must file any objections

within the fourteen-day period if that party wants to have appellate review of the proposed

findings of fact, conclusions of law, or recommended disposition.  If no objections are timely

filed, no appellate review will be allowed by any court.

## I.    THE MATTER BEFORE THE COURT

Petitioner God's Storehouse Topeka Church ("the Church") has filed its Verified Petition

(ECF No. 1) to quash a third-party administrative summons served upon its bank, Kaw Valley

Bank in Topeka ("the Bank"), by the Internal Revenue Service ("IRS") as part of a church tax

inquiry and examination.  The summons directed the Bank to produce fourteen categories of

records pertaining to all bank accounts in the Church's name for January 1, 2019 through

December 31, 2020.  Respondent IRS has filed a Motion for Summary Denial of the Verified

Petition (ECF No. 11)  As the Motion for Summary Denial is dispositive in nature, the

undersigned Magistrate Judge hereby issues the rulings herein in the form of a Report and Recommendation for the District Judge's consideration.[1]

## II.   FACTS

The following facts are taken from the Verified Petition, Affidavit of Richard Kloos, Declaration of Internal Revenue Agent Kesroy C. Henry ("Agent Henry"), or exhibits filed in the case.

### A.   The Church

The Church was founded in 2009 by Richard Kloos and his wife, Pennie Kloos, and it was incorporated as a Kansas not-for-profit corporation in 2010 by Mr. Kloos and two other individuals. Mr. Kloos is President of the Church and a member of the Board of Directors. The Church self-declares as a church rather than filing an Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code (IRS Form 1023).

The Church operates a thrift store that accepts donated goods and sells them to the public, and has a small space in its thrift store set up as a coffee shop. Agent Henry states in his Declaration that the Church's website (www.gshtopeka.org) states it is "a church that operates a thrift store and was first opened in 2009 by Rick and Pennie Kloos." In addition to the thrift store, the website states that it operates Judee's Coffee, described as "an extension of the overall experience at God's Storehouse," and sells coffee to patrons at cost. According to Agent Henry's Declaration, the Church's website did not reveal any information about church services, such as dates and times of meetings, a list of ministers, statements of creed, religious publications, or religious education. Agent Henry's general web search also did not reveal any information about the Church holding church services.

---

[1] *See* Fed. R. Civ. P. 72(b)(1); 28 U.S.C. § 636(b)(1).

Mr. Kloos is a pastor of the Church, and both Mr. and Mrs. Kloos were paid gross wages in 2019 and 2020. The Church filed multiple Forms W-2 and Forms 941[2] indicating it withheld employment taxes from wages paid to other employees, but did not withhold any employment taxes from the gross wages of Mr. and Mrs. Kloos in 2019 and 2020.

### B.    Kloos Campaign Signs

Mr. Kloos campaigned and was elected to the Kansas State Senate in November 2020. Prior to being elected, his campaign purchased and displayed yard signs that read "Rick Kloos Kansas Senate" above the words "Founder of God's Storehouse." The yard signs were vetted and preapproved by the State of Kansas Governmental Ethics Commission. The Kloos campaign signs, along with a photo of Mr. Kloos, were the subject of newspaper articles about whether the campaign signs ran afoul of federal tax law. In his affidavit, Mr. Kloos states the Church did not create, purchase, display, distribute, or in any way contribute to any yard signs associated with his campaign.

According to the Church, on September 24, 2020, the Freedom from Religion Foundation ("FFRF") sent a letter to the IRS alleging electioneering violations by the Kloos Kansas Senate campaign. The letter alleged Mr. Kloos was putting the name and logo of the Church on campaign signs to promote his candidacy.

### C.    IRS Church Tax Inquiry and Examination

On February 24, 2021, the IRS assigned Agent Henry to determine whether the Church may have engaged in political campaign intervention and if a church tax inquiry was warranted. The assignment covered the period of January 1, 2019 through December 31, 2020.

---

[2] Form 941 reports the employer's share and employee's share of social security tax and Medicare tax, withheld federal income tax, and, if applicable, withheld additional Medicare tax.

On February 26, 2021, Agent Henry sought approval to open a church tax inquiry regarding the Church. On June 23, 2021, Sunita B. Lough, the Commissioner, Tax Exempt and Government Entities Division, approved, and Agent Henry issued a Notice of Church Tax Inquiry ("NCTI"). It informed the Church that the IRS was issuing the notice because of concerns that the Church was operating as a thrift shop rather than as a church, may have engaged in prohibited political campaign intervention in 2020, may be liable for unrelated business income tax ("UBIT") from the operation of a coffee shop in 2019 and 2020, and may be liable for additional Form 941 employment taxes for wages paid to Mr. and Mrs. Kloos in 2019 and 2020. The NCTI included a list of questions to which the IRS requested the Church's response, but did not request any documents. On July 6, 2021, the Church responded to the NCTI with answers to the questions, as well as copies of various documents.

After reviewing the Church's response to the NCTI, Agent Henry still had concerns about the Church's tax-exempt status as a church, possible liability for UBIT, and liability for additional taxes under the Internal Revenue Code. Agent Henry subsequently sought approval to begin a tax church examination, which was approved by Commissioner Lough on September 1, 2021. Agent Henry issued a Notice of Church Tax Examination ("NCTE") to the Church on September 7, 2021. It informed the Church that the IRS continued to have concerns about the Church's tax-exempt status as a church, possible liability for UBIT, and liability for tax. The NCTE also included, among other things, a description of the church records and activities that might need to be examined and an offer of a pre-examination conference.

On October 14, 2021, Agent Henry and his group manager conducted a pre-examination conference with the Church's authorized representative. The pre-examination conference did not

resolve the IRS's concerns so it notified the Church's representative that the IRS would be moving forward with the examination.

On October 19, 2021, Agent Henry issued an Information Document Request ("IDR") to the Church, which sought a number of things, including copies of the Church's bank statements from January 1, 2019 to December 31, 2020. In its response to the IDR, on November 19, 2021, the Church objected to producing the bank statements, stating the request was overly broad.

On December 7, 2021, Agent Henry sent IRS Letter 3164-E to the Church advising of the IRS's intent to contact third parties during the January 22, 2022 through January 22, 2023 contact period as part of the IRS's examination and informing the Church of its right to request a list of people contacted.  On December 22, 2022, Agent Henry sent a letter to the Church advising that the documents requested in the IDR, including bank statements, were delinquent, and issued a second IDR seeking the Church's bank statements.

During the course of the IRS's church tax inquiry and examination, the Church did not produce its 2019 and 2020 bank statements, but states it voluntarily provided the following documents and information to the IRS:

(1) governing documents;
(2) a detailed history of the organization;
(3) a summary of its religious beliefs;
(4) detailed information concerning its regularly scheduled worship services;
(5) service dates for the last two years and order of worship;
(6) church member lists;
(7) tithing donation receipt records;
(8) pastoral biographical and educational information including ordination records and licensing;
(9) responsive information providing the number of funerals administered during 2019 and 2020 with sample obituaries and service documents;
(10) extensive notes from pastors' sermon and Bible studies conducted during the 2019 and 2020 fiscal years;
(11) history of its thrift store ministry selling donated home goods and clothing;
(12) sample family assistance applications documenting the free provision of goods and clothing to those in need during 2019 and 2020;

(13) minutes of all 2019 and 2020 board meetings and compensation and housing allowance resolutions for the pastors;

(14) all payroll reports;

(15) IRS Form 941s;

(16) copies of all leases and mortgages;

(17) letters from the Church's bank, insurance carrier, and accounting firm supporting the Church's ongoing operations as a Christian church;

(18) all sale, historical, and financial information associated with the sale of coffee and cookies at the thrift store and church, and

(19) a detailed explanation of [] Pastor Kloos' independent identification of himself as the "founder of God's Storehouse" on a political campaign yard sign.[3]

## D.   The Bank Summons

On February 8, 2022, Agent Henry issued an IRS administrative summons to the Bank pursuant to 26 U.S.C. § 7609, seeking fourteen separate categories of the Bank's records from all accounts in the Church's name for the period of January 1, 2019 through December 31, 2020.[4] Specifically, the summons requested:

(1) Monthly statements; (2) Deposit offsets (front and back); (3) Deposit tickets; (4) Cancelled checks (front and back); (5) Signature cards; (6) Debit and credit memos; (7) Loan applications, including lines of credit, and all documents related to loan(s); (8) Financial statements; (9) Safe deposit box entry cards; (10) Cashier's checks and applications; (11) Money orders; (12) Foreign and domestic letters of credit and wires of funds along with related documents disclosing source of funds and, for wires of funds, the destination of the funds along with any related correspondence; (13) Agency agreements and correspondence; and (14) Closing transaction on the account (check, wire transfer, etc. regardless of amount).[5]

That same day, Agent Henry served a copy of the summons on the Church via certified mail.

In March 2022, a representative of the Bank informed Agent Henry that the Bank had collected documents as directed by the summons, but those documents were being held pending resolution of the Church's petition to quash the summons.

---

[3] Verified Pet., ECF No. 1, ¶ 35; Church Resp., ECF No. 13, at 3.

[4] Summons, ECF No. 1-1, at 8.

[5] *Id.*

## III.     GENERAL LEGAL STANDARDS GOVERNING ENFORCEMENT OF AN IRS THIRD-PARTY SUMMONS

The IRS is authorized and required by 26 U.S.C. § 6201(a) "to make the inquiries, determinations, and assessments of all taxes" imposed by the Internal Revenue Code. As part of that authority, Congress has granted the IRS broad latitude to issue summonses "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . , or collecting any such liability."[6] The IRS has the authority to issue summonses to the subject taxpayer and to third parties who may have relevant information.[7] If a person or entity fails to comply with a summons, the IRS can bring an enforcement proceeding in a district court.[8]

26 U.S.C. § 7609 sets requirements and limits on the IRS's ability to issue and enforce a third-party summons. For example, 26 U.S.C. § 7609(a) requires the IRS to provide the taxpayer with notice of such a summons, and subsection (b) gives the taxpayer the right to intervene in any summons enforcement proceeding, as well as the right to petition a district court to quash the third-party summons. In that same proceeding, the IRS may counterclaim to enforce the summons, and the district court's decision will bind the third party regardless of whether the person intervenes in such proceeding.[9]  Summons enforcement proceedings are "summary in nature."[10]  The Supreme Court has stated the purpose of a summons is "not to accuse," much less adjudicate, but only "to inquire."[11] Its only use as an investigation tool is as a "crucial backstop

---

[6] *United States v. Clarke*, 573 U.S. 248, 250 (2014) (quoting 26 U.S.C. § 7602(a)).
[7] *See* 26 U.S.C. § 7602(a)(2); *Standing Akimbo, LLC v. United States*, 955 F.3d 1146, 1154 (10th Cir. 2020).
[8] 26 U.S.C. § 7604.
[9] 26 U.S.C. § 7609(b)(2)(A), (C).
[10] *Clarke*, 573 U.S. at 250 (quoting *United States v. Stuart*, 489 U.S. 353, 369 (1989)).
[11] *Id.* (citing *United States v. Bisceglia*, 420 U.S. 141, 146 (1975)).

in a tax system based on self-reporting."[12]  Courts may ask only "whether the IRS issued a

summons in good faith and must eschew any broader role of overseeing the IRS."[13] The IRS

demonstrates it issued a summons in good faith by establishing:

> [1] the investigation will be conducted pursuant to a legitimate purpose, [2] that
> the inquiry may be relevant to the purpose, [3] that the information sought is not
> already within the [IRS's] possession, and [4] that the administrative steps
> required by the [Internal Revenue Code] have been followed—in particular, that
> the 'Secretary or his delegate,' after investigation, has determined the further
> examination to be necessary and has notified the taxpayer in writing to that
> effect.[14]

These four requirements are known as the *Powell* factors.[15] Absent contrary evidence, the

IRS can make this showing by submitting an affidavit from the investigating agent.[16] The

taxpayer, however, has an opportunity to challenge that affidavit, and to urge the court to quash

the summons "on any appropriate ground," including an improper purpose.[17]

## IV.   THE "TO THE EXTENT NECESSARY" RESTRICTION IN SECTION 7611(b)(1)(A) OF THE CHURCH AUDIT PROCEDURES ACT DOES NOT APPLY TO THE BANK SUMMONS AT ISSUE

### A.   The records being acquired pursuant to a third-party summons fall within a statutory exception to "church records"

The Church contends the Church Audit Procedures Act, codified at 26 U.S.C. § 7611,

applies to the third-party recordkeeper summons served upon its Bank and places limits on the

IRS's examination of the records sought by the summons. The Church argues the additional IRS

restrictions set forth in 26 U.S.C. § 7611(b)(1)(A) apply here, and enforcement of the summons

should not, as the IRS contends, be solely based on 26 U.S.C. § 7609, the general statute

---

[12] *Id.*
[13] *Id.* (quoting *United States v. Powell*, 379 U.S. 48, 56 (1964)).
[14] *Powell,* 379 U.S. at 57–58.
[15] *Clarke*, 573 U.S. at 250.
[16] *Id.* (citing *Stuart*, 489 U.S. at 360).
[17] *Id.* (citing *Reisman v. Caplin*, 375 U.S. 440, 449 (1964)).

governing third-party summons. According to the Church, under § 7611(b)(1)(A) of the Church Audit Procedure Act, the IRS may examine church records only "to the extent necessary" to determine church status or the existence of a tax liability. The Church argues under this heightened standard, the IRS is required to show how each category of documents it seeks are necessary to its investigation, and directly and logically within the proper scope of the examination.  It contends the breadth of the IRS's summons served on its Bank cannot be supported "to the extent necessary" for all the categories of documents sought.

The IRS counters the Church's argument by asserting the provisions of 26 U.S.C. § 7611(b)(1)(A) do not apply here because that statute expressly excludes records acquired from a third-party recordkeeper "pursuant to a summons to which section 7609 applies" from its definition of "church records" in § 7611(h)(4)(B)(i).  It further asserts that the regulations and cases addressing this issue have held even if a church tax inquiry or church tax examination is underway, the provisions of § 7611 do not apply to enforcement of a summons issued to a third-party recordkeeper.  It cites two cases not binding on this Court in support of this argument: *United States v. C.E. Hobbs Foundation for Religious Training & Education, Inc.*,[18] and *Bible Study Time, Inc. v. United States*.[19]  The IRS contends enforcement of the third-party summons is determined under § 7609 by applying the *Powell* factors and is not subject to the additional restrictions on church tax examinations set forth in § 7611(b)(1)(A).

The Church Audit Procedures Act restricts the IRS when conducting church tax inquires and church tax examinations.[20]  It provides, in pertinent part, that the IRS may begin a "church tax inquiry" only if it meets reasonable belief and notice requirements.[21] The reasonable belief

---

[18] 7 F.3d 169, 173 (9th Cir. 1993).
[19] 240 F. Supp. 3d 409, 420-21 (D.S.C. 2017).
[20] 26 U.S.C. § 7611, titled "Restrictions on church tax inquires and examinations."
[21] 26 U.S.C. § 7611(a)(1)(A) and (B).

requirement is met if "an appropriate high-level Treasury official reasonably believes (on the basis of facts and circumstances recorded in writing) that the church-- (A) may not be exempt, by reason of its status as a church, from tax under section 501(a), or (B) may be carrying on an unrelated trade or business . . . or otherwise engaged in activities subject to taxation . . . ."[22]  A "church tax examination" is any examination, for purposes of making a church tax inquiry, of church records at the request of the IRS, or the religious activities of any church.[23]

Section 7611(b)(1) restricts the IRS with respect to church tax examinations.  It provides a church tax examination by the IRS may be made only:

> (A) in the case of church records, <u>to the extent necessary</u> to determine the liability for, and the amount of, any tax imposed, and
> (B) in the case of religious activities, <u>to the extent necessary</u> to determine whether an organization claiming to be a church is a church for any period.[24]

Section 7611(h)(4) defines the term "church records" and identifies two categories of records expressly excluded from the term:

> (A) In general.-- The term "church records" means all corporate and financial records regularly kept by a church, including corporate minute books and lists of members and contributors.
>
> (B)  Exception.-- Such term shall not include records acquired—
>
> > (i) pursuant to a summons to which section 7609 applies, or
> > (ii) from any governmental agency.[25]

Section 7609 governs the issuance and enforcement of third-party summonses by the IRS, and, pertinent here, applies to "any summons issued under paragraph (2) of section 7602(a)."[26] Paragraph (2) of § 7602(a) authorizes the IRS to summon "any person having

---

[22] 26 U.S.C. § 7611(a)(2).
[23] 26 U.S.C. § 7611(h)(3)(A)-(B).
[24] 26 U.S.C. § 7611(b)(1)(A)-(B) (underlining added).
[25] 26 U.S.C. § 7611(h)(4)(A)-(B).
[26] 26 U.S.C. § 7609(c).

possession, custody, or care of books of account containing entries relating to the business of the person liable for tax,"[27] also referred to as a third-party recordkeeper and which includes a bank.[28]

Applying the plain statutory language set out above, the Court finds the third-party recordkeeper summons, seeking the banking and financial records of the Church's bank accounts, falls squarely within the § 7611(h)(4)(B)(iv) statutory exception to the definition of "church records," under the exception for "records acquired pursuant to a summons to which section 7609 applies."  Enforcement of the IRS's third-party summons to the Church's Bank is therefore governed by § 7609 through application of the *Powell* factors and is not subject to the additional restrictions on church tax examinations set forth in § 7611(b) of the Church Audit Procedures Act, notwithstanding the summons was issued in conjunction with a church tax inquiry and examination.

Notably, the plain language of § 7611 and the attendant Treasury Regulation expressly exclude records obtained from third-party recordkeepers—such as banks—from the definition of "church records." Treasury Regulation § 301.7611-1 provides guidance regarding the extent to which the IRS may gain access to third-party records during church tax inquiries and examinations.  It provides that records held by a third-party recordkeeper bank are not "church records," and access to such records is permitted through a third-party summons under § 7609, without complying with the procedures in § 7611:

> The Internal Revenue Service may request a church to provide information necessary to locate third-party records (for instance, bank records), including information regarding the church's chartered name, state and year of incorporation, and location of checking and savings accounts, without application of the procedures of section 7611.

---

[27] 26 U.S.C. § 7602(a).
[28] *See* 26 U.S.C. § 7603(b)(2)(A) (listing third-party recordkeepers).

> Records (for instance, cancelled checks or other records in the possession of a bank) held by third party recordkeepers, as defined in section 7609, are not considered church records. Thus, subject to the provisions set forth in section 7609 regarding third party summonses, access is permitted to such records without regard to the requirements of the procedures set forth in section 7611.[29]

The limited caselaw on this issue is consistent with the plain reading of the statute's exception for records acquired pursuant to a third-party summons from the definition of "church records." In *C.E. Hobbs Foundation for Religious Training & Education, Inc.*, the Ninth Circuit Court of Appeals held that the IRS's plain reading of § 7611(h)(4)(B) was "clearly correct," the third-party summons issued to a bank as part of a church tax examination was not governed by § 7611, and the IRS only had to show that the summoned documents were relevant to its investigation.[30] The district court in the District of South Carolina in the *Bible Study Time* case similarly ruled that "[t]hird-party summonses are governed by Section 7609, not Section 7611, even when the summons is issued in connection with a church tax inquiry."[31] The court found that such a plain reading was consistent with the language of § 7609 and § 7611, as well as the legislative history of § 7611.[32]

The Church cites the First Circuit Court of Appeals decision, *United States v. Church of Scientology Boston,*[33] in support of its argument that at least one circuit court has recognized that § 7611 must require the IRS to prove necessity for a summons seeking numerous documents, including bank statements and other church financial information. The Church's reliance on this case is misplaced. At issue in the underlying *Church of Scientology Boston* case was an IRS

---

[29] Treas. Reg. § 301.7611-1, Q&A(5), 26 C.F.R. § 301.7611-1.
[30] 7 F.3d 169, 173 (9th Cir. 1993).
[31] 240 F. Supp. 3d 409, 420 (D.S.C. 2017).
[32] *Id.* at 420-21.
[33] 933 F.2d 1074, 1079 (1st Cir. 1991) (rejecting the IRS's argument that the *Powell* relevance standard applies to an examination of church documents and requiring the IRS to "explain why the particular documents it seeks will significantly help to further the purposes of the investigation.").

summons served on the church's agent, not a third-party recordkeeper.[34] Because the summons was issued on the church, the "to the extent necessary" restriction in § 7611(b)(1) applied to the summons and the church records exception for third-party summonses did not apply.

Further, the factual comparison the Church makes is misplaced. In *Church of Scientology Boston*, it was estimated that the summons at issue requested over 200,000 pages of material.[35] The filings for the present case are devoid of any indication that the summons to Kaw Valley Bank is anticipated to encompass a similarly voluminous amount of documentation. It bears noting that the summons at issue in *Church of Scientology Boston* was directed to the church's agent, and thus the burden to comply with "the IRS's massive document request" was on the church.[36] Here, the burden to produce the records is on the Bank—not the Church. The fact the Bank has not objected to the summons, but instead has already collected the documents as directed by the summons and is simply waiting to release those documents to the IRS pending resolution of the Church's motion to quash, supports the conclusion that the records requested here are not similarly massive and unduly burdensome.

The Court recognizes that the Tenth Circuit Court of Appeals, in *United States v. Church of World Peace*,[37] has held some measure of necessity should be imposed on the *Powell* relevancy standard for enforcement of a summons served as part of a church examination. It required the IRS to apply the "extent necessary" language from the previous statute which restricted church examinations, 26 U.S.C. § 7605(c).[38] This statute was later supplanted by Section 7611.[39] However, this case is distinguishable because the earlier statute, § 7605(c), did

---

[34] 739 F. Supp. 46, 47 (D. Mass. 1990).
[35] *Id.* at 50 n. 6.
[36] *Id.* at 50.
[37] 775 F.2d 265, 267 (10th Cir. 1985).
[38] *Id.* at 267-68.
[39] *Id.* at 267.

not contain the exception from the definition of "church records" found in Section 7611(h)(4)(B)(i). In addition, the summons at issue in *World Peace* was served on the church and not a third-party recordkeeper and sought, of particular concern to the court, a list of members and names of persons from whom marriage ceremonies were performed.[40] Neither of those circumstances exist in this case.

The Court finds the third-party recordkeeper summons at issue falls within the § 7611(h)(4)(B)(i) statutory exception to "church records," and therefore must be analyzed under the *Powell* factors and not the heightened "to the extent necessary" relevancy standard provided in § 7611(b)(1)(A).

**B.      The IRS's issuance of a third-party summons for the Church's bank records does not circumvent the purposes of § 7611(b)**

The Church next argues the IRS should not be permitted to circumvent the § 7611(b)(1) restriction on examinations by seeking the Church's financial records from a third-party recordkeeper through a summons rather than from the Church itself. The Church notes the same Conference Agreement the IRS quotes extensively, 1986 House Conference Report No. 98-861, also states: "[t]he conferees further intend that the IRS will be prohibited from using information obtained from third party bank records to avoid the purposes of the church audit procedures."[41] The Church argues permitting the IRS to summon any church records it believes may be reasonably relevant from a third-party—without abiding by § 7611's heightened standard that would apply if summoning the same records directly from the church—stands in opposition to the purposes of § 7611 and threatens its First Amendment rights.

---

[40] *Id.* at 265-66.
[41] Church Resp., ECF No. 13, at 10 (quoting H.R. Conf. Rep. No. 98-861 at 1106 (1986)).

The IRS argues the Church's concerns are unfounded. It points to the portion of the Conference Agreement prohibiting the IRS from determining a church is not entitled to an exemption or assessing tax for unrelated business income against a church "solely on the basis of third party records," without complying with § 7611.[42] It also argues that if the Church's argument is accepted, then the express exclusion of third-party summons in § 7611(h)(4)(B)(i) would be superfluous.

The parties pick and choose the portions of the Conference Agreement that support their respective arguments. The two paragraphs of the Conference Agreement (legislative history) pertinent to third-party summonses read in their entirety as follows:

> Records held by third parties (e.g., cancelled checks or other records in the possession of a bank) are not considered church records for purposes of the Conference Agreement. Thus, *subject to the general code provisions regarding third party summonses, the IRS is permitted access to such records without regard to the requirements of the church audit procedures* (Sec. 7609). As under present law, *either the IRS or a third party recordkeeper generally is required, however, to inform a church of any IRS requests for materials.*
>
> The Conference Agreement provides that the IRS may not determine that a church is not entitled to an exemption or assess tax for unrelated business income against a church solely on the basis of third party records, *without complying with the church audit procedures.* This limitation does not apply to assessments of tax other than for unrelated business income (e.g., for social security or other employment taxes). *The conferees further intend that the IRS will be prohibited from using information obtained from third party bank records to avoid the purposes of the church audit procedures.* [43]

The highlighted language in the first quoted paragraph makes clear what the Court has already held, that the IRS is *permitted access to* records summoned from a third party without meeting the requirements of the church audit procedures. The church must, however, be given notice of the IRS requests. However, as the second quoted paragraph makes clear, if the IRS seeks to *use*

---

[42] IRS Reply, ECF No. 14, at 3 (quoting H.R. Conf. Rep. No. 98-861 at 1106).
[43] H.R. Conf. Rep. No. 98-861 at 1106 (1986) (emphasis added).

the third-party materials—to determine the church is not entitled to an exemption or to assess tax for unrelated business income—then the IRS must comply with specific church audit procedures. Those specific procedures are set forth in the corresponding Treasury Regulation, which employs language substantively similar to the legislative history. Treasury Regulation § 301.6711-1 Answer to Question 5 clarifies the specific church audit procedures with which the IRS must comply:

> Third party materials may be acquired without application of the procedures of section 7611; however, a determination that a church is not entitled to an exemption, or an assessment of tax for unrelated business income against a church, may not be made solely on the basis of third party records, **without first complying with the requirements of two notices and offering of a conference** (see QQs and As 9 and 10) **pursuant to the procedures set forth in section 7611**. . . . Third party bank records will not be used in a manner inconsistent with the procedures set forth in section 7611 or in these questions and answers.[44]

The Court finds the legislative history of § 7611 and the corresponding Treasury Regulation reflect that the legislature considered and addressed concerns similar to those raised by the Church in this case—that the IRS might use third-party summons to circumvent the additional protections for churches set out in § 7611. Both the legislative history and Treasury Regulation thus qualify the IRS's authority to issue third-party summonses pursuant to § 7609, but without requiring the IRS to meet the higher "to the extent necessary" restriction in § 7611(b)(1)(A). Reading these provisions in tandem, it is clear the legislative intent was to prevent the IRS from using third-party summonses to circumvent the procedural requirements of § 7611 (requiring the IRS to provide notice of church tax inquiry, notice of church tax examination, and offer of conference) before using third-party materials like those at issue in this case.

---

[44] Treas. Reg. § 301.7611-1, Q&A(5), 26 C.F.R. § 301.7611-1 (bold added).

Here, the IRS met the § 7611 procedural requirements of providing the two notices and offering a pre-examination conference. It is undisputed that the IRS provided the Church with a Notice of Church Tax Inquiry and Notice of Church Tax Examination, both of which were approved by Commissioner Lough; and made an offer of pre-examination conference, which the Church accepted. The IRS further complied with § 7609(a) by giving the Church notice of the third-party summons that it issued to the Bank.

The Church's concerns regarding the IRS circumventing the protections afforded churches under § 7611 by issuance of a third-party summons have been considered and addressed. The Court rejects the Church's arguments to the contrary, which if accepted would render the express exclusion of records acquired pursuant to a third-party summons from the definition of "church record" in § 7611(h)(4)(B)(i) superfluous.

## V.   THE IRS HAS MET ITS BURDEN TO MAKE A *PRIMA FACIE* SHOWING OF GOOD FAITH IN ISSUING THE SUMMONS

Having determined that enforcement of the IRS's third-party summons to the Church's Bank is governed by § 7609 utilizing the *Powell* factors and is not subject to the additional restrictions on church tax examinations set forth in § 7611(b)(1)(A), the Court evaluates whether the IRS has made its *prima facie* showing that the summons was issued in good faith under the four-factor test articulated in *United States v. Powell*.[45]

### A.   The IRS has not referred the case for criminal prosecution

Before addressing the *Powell* factors, the Court first considers the threshold question whether the IRS has referred the Church's case to the Department of Justice for criminal prosecution.[46]   Section 7602(d)(1) expressly provides that "[n]o summons may be issued under

---

[45] 379 U.S. at 57-58.
[46] *Speidell v. United States through IRS*, 978 F.3d 731, 738 (10th Cir. 2020).

this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person."

The IRS can satisfy this threshold requirement through the affidavit of the agent who issued the summons and who is seeking enforcement.[47] In this case, Agent Henry states in his Declaration that, "[n]o Department of Justice referral, as defined by 26 U.S.C. § 7602(d), is in effect with respect to [the Church] for the matters under examination." [48] This is sufficient for the IRS to make the requisite showing the case has not been referred to the Department of Justice for criminal prosecution.

**B.**     **First and Second *Powell* Factors – The IRS has made a *prima facie* showing it is conducting the investigation pursuant to a legitimate purpose or purposes and its inquiry is relevant to those purposes**

The first *Powell* factor requires that the IRS show "the investigation will be conducted pursuant to a legitimate purpose," and the second *Powell* factor requires the IRS show "the inquiry may be relevant to the purpose."[49]  The IRS's burden in connection with the *Powell* factors is slight, because statutes such as 26 U.S.C. 7602(a) "must be read broadly to ensure that the enforcement powers of the IRS are not unduly restricted."[50] This burden is generally met with the affidavit of the IRS agent who issued the summons.[51]

In assessing relevance, the IRS is authorized by 26 U.S.C. § 7602(a)(1), to summon and examine any books, papers, records, or other data which "may be relevant or material" to a particular tax inquiry. "The language 'may be' reflects Congress' express intention to allow the

---

[47] *Id.*
[48] Henry Decl., ECF No. 12-1, ¶ 34.
[49] *Powell*, 379 U.S. at 57.
[50] *Speidell*, 978 F.3d at 738 (quoting *United States v. Balanced Fin. Mgmt, Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985)).
[51] *Id.*

IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its admissibility. The purpose of Congress is obvious: the [IRS] can hardly be expected to know whether such data will in fact be relevant until it is procured and scrutinized."[52]  Thus, an IRS summons "is not to be judged by the relevance standards used in deciding whether to admit evidence in federal court."[53] The IRS "should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense."[54] In cases involving an IRS summons of records belonging to third parties, the relevancy requirement is satisfied by a showing the materials sought "might throw light" on the correctness of the tax returns.[55]

The IRS offers the Declaration of Agent Henry to make its showing for the first and second *Powell* factors. Agent Henry states in his Declaration that the "books, papers, records, and other data sought by the summons may be relevant" to the following purposes:

> Determine whether [the Church] was operating as a thrift shop rather than as a church or whether [the Church] may have unrelated business income and therefore may be liable for UBIT. Further, the information may be relevant to identify bank accounts used by [the Church]. Identifying bank accounts used by [the Church] in turn may also be relevant to determine whether [the Church] may have engaged in prohibited political campaign intervention in 2020, may have unrelated business income and therefore may be liable for UBIT from the operation of a coffee shop in 2019 and 2020, and may be liable for additional Form 941 employment taxes for wages paid to Mr. and Mrs. Kloos in 2019 and 2020.[56]

The IRS's stated purposes as described in Agent Henry's Declaration are clearly consistent with the IRS's duty and authority "to make the inquiries, determinations, and assessments of all taxes . . . imposed by [the Internal Revenue Code]."[57]  The IRS has satisfied

---

[52] *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) (emphasis added).
[53] *Id.*
[54] *Id.*
[55] *United States v. City Nat. Bank & Tr. Co.*, 642 F.2d 388, 389 (10th Cir. 1981) (quoting *United States v. Davey*, 543 F.2d 996, 1000 (2d Cir. 1976)).
[56] Henry Decl. ¶ 33.
[57] 26 U.S.C. § 6201(a).

its initial burden to show it is conducting its investigation pursuant to a legitimate purpose or purposes under the first *Powell* factor and the inquiry may be relevant to those purposes under the second *Powell* factor.

Once the IRS has made its *prima facie* case, the burden of going forward shifts to the taxpayer to show enforcement of the summons would "constitute an abuse of the court's process, or that in issuing the summons the IRS lacks institutional good faith."[58] Regardless of the specific rebuttal argument made, the taxpayer's burden is "a heavy one."[59] To defeat the IRS's *prima facie* case, "it is clear that a taxpayer must factually oppose the [IRS's] allegations by affidavit. Legal conclusions or mere memoranda of law will not suffice."[60] To the extent the summary judgment standard is applicable, it precludes taxpayers such as the Church from relying upon conclusory statements, because they do not suffice to create a genuine issue of material fact.[61]

The Church challenges the legitimacy and relevance of each of the IRS's four stated purposes for the investigation. Each stated purpose, its purported relevance to the IRS investigation's purpose, and the Church's arguments to the contrary regarding each are addressed below.[62]

---

[58] *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1183 (10th Cir. 2019) (internal citations and quotations omitted).

[59] *Id. See also Speidell,* 978 F.3d at 738 ("Once the IRS provides such an affidavit, a 'heavy' burden falls on the taxpayer to factually refute the *Powell* showing or factually support an affirmative defense."); *Anaya v. United States*, 815 F.2d 1373, 1378 (10th Cir. 1987) ("[T]he [Supreme] Court declared that a taxpayer contending the [IRS] has not acted in good faith in the issuance of a summons has a heavy burden in proving his contention.").

[60] *High Desert Relief,* 917 F.3d at 1183.

[61] *Speidell*, 978 F.3d at 739.

[62] Although the IRS must demonstrate only one legitimate purpose for its investigation, the Court considers each of the four alleged purposes of the investigation.  If any one purpose is found to be legitimate and the rest of the *Powell* factors are satisfied, then the IRS will have met its burden.

1.        **Political campaign intervention is a legitimate purpose for the investigation and the Church's bank records are relevant to that purpose**

The first argument the Church raises on this point is that the IRS initiated this church tax examination after receiving a complaint from the FFRF, which accused the Church of "illegal politicking."[63] This argument is part and parcel of the allegation in the Church's Petition to quash the IRS summons stating that: "*[U]pon information and belief*, [the Church] believes that this church examination was initiated at the behest of Pastor Kloos' political opponents through the FFRF as they claim on their website."[64] This allegation is sheer supposition and not sufficient to meet the Church's burden to show an improper IRS purpose. The Church's argument is further belied by the fact that issues regarding Mr. Kloos' campaign signs were a matter of public record as publicized in newspapers. The Church's vague attempt to show the IRS's investigation was politically motivated by the FFRF complaint is unsubstantiated. The Court rejects the Church's speculation out of hand.

The Church also argues the Kloos' campaign signs cannot constitute prohibited political campaign intervention because the Kansas Governmental Ethics Commission vetted and preapproved the signs, determining the signs' reference to the Church "provided voters with valuable context 'regarding who [Mr. Kloos is] and the nonprofit with which [he] is associated.'"[65] The Church provides no legal authority to support its argument that a campaign sign preapproval determination by a state governmental ethics commission is binding on the IRS.

The Church next cites the Situation 3 hypothetical in IRS Revenue Ruling 2007-41 as an example of a political advertisement identifying the organization's leader that does not constitute campaign intervention by the tax-exempt organization. The hypothetical involves the CEO of a

---

[63] Church Resp., ECF No. 13, at 13.
[64] Verified Pet., ECF No. 1, at ¶ 49 (emphasis added).
[65] Verified Pet. at ¶ 12 (quoting, ostensibly, the Kansas Governmental Ethics Commission).

tax-exempt hospital publicly supporting a candidate in a full-page newspaper ad, which expressly identifies the CEO and the hospital by name. The hypothetical concludes: "Because the ad was not paid for by [the tax-exempt hospital], the ad is not otherwise in an official publication of [the hospital], and the endorsement is made by [the CEO] in a personal capacity, the ad does not constitute campaign intervention by [the hospital]." [66] The ad in the Situation 3 hypothetical is distinguishable from the Kloos' campaign signs because the hypothetical political ad contained the words: "Titles and affiliations of each individual are provided for identification purposes only."[67] The Kloos campaign signs included no similar language. The hypothetical further presumes the ad at issue was not paid for by the tax-exempt entity. This is precisely the question the IRS seeks to investigate relative to the Church. The hypothetical therefore highlights the importance and legitimacy of the IRS investigation into whether the Church paid for the Kloos Senate campaign signs or whether they were official publications of the Church.

The Church argues, because its Verified Petition and Mr. Kloos' affidavit state the Church did not pay for the campaign signs, the Court must accept this is true based upon the summary judgment standards. In *Speidell v. United States*,[68] the Tenth Circuit recognized the IRS's "slight" burden and the taxpayer's "heavy" burden for enforcement of an IRS summons under the *Powell* framework may be incompatible with the normal summary judgment standards. The *Speidell* court concluded it need not resolve this issue because the taxpayers in that case failed to submit proof sufficient under either standard.[69] Like in *Speidell*, the Court here finds the Church fails to meet its burden under either the "heavy" taxpayer burden for IRS summons enforcement or the summary judgment standards. Even if the Court accepts Mr. Kloos' statement

---

[66] Rev. Rul. 2007-41, 2007-1 C.B. 1421 (IRS RRU 2007).
[67] *Id.*
[68] 978 F.3d at 738-40.
[69] *Id*. at 738.

the Church did not pay for his campaign signs, as set forth in his affidavit, this is not sufficient to refute the IRS's showing its asserted purpose—determining whether the Church engaged in prohibited political campaign intervention—is legitimate and the Church's bank records are relevant to that purpose.  For example, investigation of the Church's bank records also may show whether the Church paid other expenses associated with the Kloos' campaign.

      The Church argues its bank records are irrelevant to the IRS inquiry because all of the financial transactions of the Kloos campaign are a matter of public record so the IRS should simply use the link the Church provided to view those public records online and verify the campaign's purchase of the campaign signs rather than summon the Church's bank records.[70] But the Church does not get to dictate that the IRS obtain the information on this issue from public records rather than from the Church or its bank. The bank records sought from the Church's bank are not equivalent to public campaign finance records; the Bank's records may provide different and additional information relevant to the investigation. Further, the IRS is not in possession of the campaign finance records. The Church's assertion that it has already produced voluminous records for IRS inspection sufficient to allow the IRS to complete its investigation does not rebut the IRS showing that it is not in possession of the information summoned.[71] "The *availability of information from other sources* does not, in any event, support the premise that the IRS *already* has the relevant information."[72]

      The Church also argues the IRS's assertion the Church engaged in political campaign intervention is pure speculation, and based only on campaign signs legitimately used by Pastor Kloos. But, as the IRS asserts, the requested bank records may be relevant to determining

---

[70] Church Resp., ECF No. 13, at 14-15.
[71] *Standing Akimbo,* 955 F.3d at 1160.
[72] *Bible Study Time*, 240 F. Supp. 3d at 422 (emphasis added).

whether the Church incurred any expenses associated with the Kloos' campaign to determine if the Church engaged in campaign intervention in contravention of 26 U.S.C. § 501(c)(3). The Church is correct that the IRS has not alleged it has direct evidence the Church impermissibly contributed to Mr. Kloos' campaign, but that is not required. The IRS need only show "potential relevance." It has done so here; the Church's bank records for the period in question—2019 to 2020—are of at least potential relevance to determining whether the Church engaged in campaign intervention or otherwise impermissibly contributed to Mr. Kloos' 2020 campaign.

### 2. Investigation of whether the Church operates as a thrift store rather than a church is a legitimate purpose for the investigation and the Church's bank records are relevant to that purpose

The Church argues that an investigation of whether it operated primarily as a thrift store and not a church cannot serve a legitimate purpose "because operating a thrift store *simultaneously* does not mean that an entity cannot qualify as a church for IRS purposes."[73] It contends, even if the Church lacked church status for tax purposes, it would still not be required to file a Form 990-T or pay income tax on revenues from its sale of entirely donated goods through the thrift store operations. According to the Church, under 26 U.S.C. § 513(a)(3), "the selling of merchandise, substantially all of which has been received by the organization as gifts or contributions," is not considered as an unrelated business which could generate tax liability. It notes the IRS has long recognized that churches, such as the Salvation Army, commonly operate thrift stores as an outgrowth of their ministry.

However, the IRS is examining whether the Church operates as a thrift store *instead* of a church (not simultaneously as a church and thrift store), and should therefore be filing appropriate federal tax returns (or instead file an application for tax-exempt status and, if the

---

[73] Church Resp., ECF No. 13, at 17 (emphasis added).

application is granted, file an annual Form 990).[74] This is a legitimate purpose of the IRS investigation. The Church also argues more generally that investigating its status as a church is not a legitimate purpose of the IRS investigation, stressing the extensive information it has already provided to the IRS. But again, as noted earlier, the Church's assertion that it has already produced voluminous records for IRS inspection sufficient to allow the IRS to complete its investigation does not rebut the IRS showing that it is not in possession of the information summoned.

Turning to the question of whether the bank records the IRS has summoned are relevant to this issue, the Church argues:

> Significantly, neither the IRS's fourteen criteria nor the Tax Court's associational test involves an examination of an organization's finances to determine whether it qualifies as a church for tax purposes. Because the Church has already provided sufficient evidence to prove church status per the IRS criteria and because the criteria for church status do not include a review of bank documents, the information the IRS demands is therefore not relevant to its determination of church status.[75]

Regardless of whether the IRS's fourteen criteria or the Tax Court's associational test *expressly* "involves an examination of an organization's finances to determine whether it qualifies as a church for tax purposes," it seems likely the bank records the IRS has summoned may throw light on, or provide some evidence bearing on, some of the fourteen criteria or the associational test. The Church's argument that an organization's finances and bank documents are irrelevant to a determination of whether the organization qualifies as a church for tax purposes is implausible. In any event, the IRS offers specific examples of how the requested bank records are relevant to

---

[74] IRS Reply, ECF No. 14, at 4. *See also* Henry Decl. at ¶ 33 (The summoned bank records "may be relevant to determine whether [the Church] was operating as a thrift shop *rather than* as a church….") (emphasis added).
[75] Church Resp., ECF No. 13, at 17.

the church determination. It asserts they may "show whether regular deposits were made consistent with [the Church's] representations regarding regular tithing or whether cancelled checks or other debits indicate payments were made for other church-related services like baptisms or weddings."[76] The Court finds these are persuasive examples of how the requested bank records may be relevant to the IRS's investigation whether the Church qualifies as a church for tax purposes and certainly satisfy the "potential relevance" test.

### 3.        Investigation of the Church's employment tax liability is a legitimate purpose and the Church's bank records are relevant to that purpose

The Church argues that examining the Church's employment tax liability is not a legitimate purpose, because it is not responsible for withholding employment taxes on wages paid to its clergy. The fact that the Church did not withhold any employment taxes from Mr. and Mrs. Kloos is irrelevant, the Church contends, because Mr. and Mrs. Kloos are ministers who, as clergy, are exempt from automatic federal income tax withholding and may prepay their federal income tax obligations using quarterly estimated payments. Neither the Church, nor the IRS address whether Mr. and Mrs. Kloos made such quarterly payments. Rather, the Church argues to the extent that Mr. and Mrs. Kloos may owe additional employment taxes, this would be an individual tax liability not a liability on the part of the Church, because of their clergy status. The Church contends any examination of its bank records is therefore irrelevant in this church tax examination.

The IRS challenges the Church's allegation that Mrs. Kloos is a pastor. It points out that this allegation is not supported by any evidence. Mr. Kloos' Affidavit does not state that Mrs. Kloos is a pastor, and the Church did not provide an affidavit or declaration from Mrs. Kloos.

---

[76] IRS Reply, ECF No. 14, at 5.

And, to date, the IRS states it has seen no evidence to suggest that Mrs. Kloos is a pastor. Therefore, the IRS argues even if the Church would be considered a church, there is no evidence that Mrs. Kloos is a pastor of that church, and the Church would be liable for employment taxes on wages paid to Mrs. Kloos. The IRS also asserts the summoned information is relevant to whether the Church has properly reported wages paid to Mr. and Mrs. Kloos on the Forms W-2 and Forms 941.

The Court finds church status inquiries, as well as inquiries into wages paid by a church to its employees are within the IRS's authority.[77] It further finds the IRS's investigation of whether the Church is a church for tax purposes and any employment tax liability for wages paid by the Church to Mr. and Mrs. Kloos are legitimate purposes, and the Church's bank records are relevant to those purposes. The Church has not refuted the IRS's *prima facie* showing.

4.    **Investigation of unrelated business income generated by the coffee shop is a legitimate purpose and the Church's bank records are relevant to that purpose**

The Church contests the IRS's contention that the bank records might shed light on whether the Church has properly recorded income and expenses from its coffee shop to determine if it has unrelated business income. The Church states the coffee shop is integrally related to the Church's overarching religious purpose and is operated at cost. Because the coffee shop is substantially related to the Church's exempt purpose, the Church contends, it is not liable for UBIT.

The Church's argument is premised on the assumption that it definitively qualified for tax-exempt status for 2019-2020 and that it indisputably operates its coffee shop at cost, pursuant

---

[77] *See* 26 U.S.C. § 6201(a) (The IRS "is authorized and required to make the inquiries, determinations, and assessments of all taxes . . . imposed by [the Internal Revenue Code]").

to its stated mission. Whether the Church did in fact qualify as a church for IRS purposes is a topic of the present investigation, which will impact determination of whether the Church may be liable for UBIT from its operation of the coffee shop. Comparison of bank deposits from the Church coffee shop with disbursements for costs and expenses associated with the coffee shop are potentially relevant to whether the Church is making a profit and therefore has reportable income. The Church fails to refute the IRS's showing that investigation of unrelated business income generated by the Church's coffee shop is a legitimate purpose and the bank records may be relevant to that purpose.

The Church further argues that the IRS's request for its bank records to determine whether the Church may be liable for UBIT from its operation of the coffee shop is obviated by the fact that it provided the IRS its own Quicken and point-of-sale records. Again, as discussed previously, the fact that information may be available to the IRS from other sources does not establish the information is already in the IRS's possession or should preclude enforcement of the summons.

### 5.   The Church's overbreadth argument as to the scope of the IRS summons is overruled

The Church also argues that the summons itself is overly broad, requesting signature cards and access to any safe deposit boxes. It points out that the IRS argues in its briefs about the relevance of "information the summons seeks —monthly statements, records of deposits, canceled checks—"[78] but has never articulated a reasonable belief that production of all fourteen categories of the records are relevant to any legitimate purpose. The Church contends many of these items are not necessary for the IRS's determination of church status or any other purpose.

---

[78] IRS Br. in Supp. of Mot. for Summ. Denial, ECF No. 12, at 9.

The Court agrees with the Church that the IRS's relevancy arguments in the briefing are focused on "monthly statements, records of deposits, and canceled checks" and not the eleven other categories of records sought. Paragraph 33 of Agent Henry's Declaration, however, does state the "books, papers, records, and other data sought by the summons may be relevant" to the four asserted purposes. Under the "slight" burden standard imposed on the IRS for enforcement of the summons, the Court finds this to be sufficient for the IRS to meet its initial burden for all categories of records sought in the summons.  The Court does not believe that standard requires the IRS to explain its rationale for every category of material summoned from the Church's bank. Once again, the Court notes the summons here is to a third party, the Church's bank, which has not objected to the scope of the summons. As the Tenth Circuit has recognized in addressing summons overbreadth arguments, "*Powell* does not require that the IRS explain why it seeks information beyond showing its potential relevance to a legitimate purpose."[79]

### C.     Third *Powell* Factor – The IRS has shown that the information sought is not already within its possession

The third *Powell* factor is whether the information sought is already within the possession of the IRS. Agent Henry states in his Declaration that in March 2022 he received a phone call from the Bank's representative, who told him that documents responsive to the summons had been collected but were being held pending a final resolution of the Church's motion to quash. He further states in his Declaration that, "[t]he books, papers, records, and other data sought by the summons are not in the possession of the IRS."[80] The IRS has made a *prima facie* showing as to the third *Powell* factor. The Church admits it has declined to provide the summoned financial records and does not refute or contest Agent Henry's statements.

---

[79] *Standing Akimbo*, 955 F.3d at 1166; *Speidell*, 978 F.3d at 743.
[80] Henry Decl. ¶ 32.

**D.**     **Fourth *Powell* Factor – The IRS has shown that it has followed the required administrative steps**

The fourth *Powell* factor requires a showing by the IRS that the "administrative steps required by the Internal Revenue Code have been followed." To meet this requirement, the IRS must comply with the procedures outlined in § 7602(c)(1), requiring it to give "reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made." Agent Henry states in his Declaration that "[a]ll administrative steps required by the Internal Revenue Code for the issuance of the summons have been followed."[81]  The IRS has made a *prima facie* showing as to the fourth *Powell* factor. The Church asserts two arguments to refute this showing.

**1.**     **The IRS was not required to provide the FFRF Letter to the Church in its Notice**

The Church argues the IRS was required to provide a copy of the FFRF Letter when it gave written notice of its intent to examine church records. It asserts that § 7611(b)(2) requires that the IRS give it written notice of its intent to examine church records. It further asserts that under § 7611(b)(3)(A), the IRS's church tax examination notice must include: (i) A copy of the inquiry notice previously given to the church; (ii) A description of all church records and activities that the Service seeks to examine; (iii) An offer of a pre-examination conference; and (iv) "a copy of all documents which were collected or prepared by the Internal Revenue Service for use in such examination and the disclosure of which is required by the Freedom of Information Act."[82]  The Church contends that the IRS did not comply with the fourth requirement—to provide a copy of all documents it collected for use in the examination required

---

[81] *Id.* at ¶ 35.
[82] 26 U.S.C. § 7611(b)(3)(A)(i)-(iv).

to be disclosed under the Freedom of Information Act—by its failure or refusal to provide the FFRF Letter.

The IRS argues that it was not required to provide the FFRF Letter when Agent Henry issued the NCTE to the Church on September 7, 2021 because 26 U.S.C. § 7611(b)(3)(A)(iv) requires production with the NCTE of only those documents the IRS collected "for use in such examination." It asserts that information concerning the Church's potential political campaign activity was publicly available in several newspaper articles at the time, and any such information contained in the FFRF Letter was not needed or used by the IRS to determine if a church tax inquiry or examination were necessary. The IRS further argues it is not required to disclose information that may reveal the existence or identity of informants, as provided by Treasury Regulation § 301.7611-1, Q&A (10). The IRS maintains it is allowed to continue such a position under the Treasury Regulation.

Treasury Regulation § 301.7611- Answer to Question 10 provides guidance regarding the contents of the NCTE the IRS is required to provide to the Church under Section 7611.  It provides, in pertinent part,:

> The notice of examination (second notice) is required to include (1) a copy of the church tax inquiry notice (first notice) previously provided to the church; (2) a description of the church records and activities sought to be examined; and (3) a copy of all documents which were collected or prepared by the Internal Revenue Service for use in the examination, and which are required to be disclosed under the Freedom of Information Act (5 U.S.C. 552) as supplemented by section 6103 of the Code (relating to disclosure and confidentiality of tax return information). The documents to be supplied under this provision will be limited to documents specifically concerning the church whose records are to be examined and will not include documents relating to other inquiries or examinations or to Internal Revenue Service practices and procedures in general. **Disclosure to the church will be subject to restrictions regarding the disclosure of the existence or identity of informants.**[83]

---

[83] Treas. Reg. § 301.7611-1 Q&A(10), 26 C.F.R. § 301.7611-1 (bold added).

Under this guidance, the IRS's disclosures to the Church "will be subject to restrictions regarding the existence or identity of informants." Because the FFRF letter may contain information regarding the existence or identity of an informant, it would be restricted from disclosure by the IRS. The Court concludes that the IRS was not required to provide the Church with a copy of the FFRF letter with the NCTE issued to the Church.

### 2. An appropriate high-level Treasury official approved the Church tax inquiry and examination

The Church argues that the IRS failed to follow the required administrative steps because Commission Lough, the Commissioner of the Tax Exempt and Government Entities Division who approved its church tax inquiry and church tax examination, is not "an appropriate high-level Treasury official."[84] The Church's argument centers on the fact that the language of § 7611(h)(7) and attendant Treasury Regulation were not updated to reflect the organizational restructuring of the IRS that took place from 1998-2000. The Treasury Regulation still provides that the IRS may open a church tax inquiry only upon the reasonable belief of "the appropriate Regional Commissioner (or higher Treasury official),"[85] but the position of "Regional Commissioner" no longer exists. According to the Church, the IRS has not engaged in notice-and-comment rulemaking to update the Regulation, and instead has relied on a Delegation Order to delegate church tax inquiry and examination approvals to the Commissioner of the Tax Exempt and Government Entities Division. The Church questions the legality of this delegation.

The Church's arguments are unpersuasive. This same essential question was addressed in *United States v. Living Word Christian Center*, except in that case, the Treasury official who had

---

[84] 26 U.S.C. § 7611(h)(7).
[85] Treas. Reg. § 301.7611-1 Q&A(1).

approved the church tax examination was a *Director* of Exempt Organizations.[86] The court concluded the Director of Exempt Organizations was not an "appropriate high-level Treasury official" within the meaning of § 7611, but found "the Commissioner of Tax Exempt and Government Entities" was the "logical counterpart to the Regional Commissioner."[87]

The Church has failed to show Sunita B. Lough, the Commissioner, Tax Exempt and Government Entities Division, who approved the Church Tax Inquiry and Church Tax Examination with respect to the Church, is not "an appropriate high-level Treasury official" within the meaning of § 7611. Moreover, while *Living Word Christian Center* is not binding authority on this Court, it does support a conclusion that Ms. Lough, as *the Commissioner, Tax Exempt and Government Entities Division*, even if not an appropriate higher level Treasury official, is the logical counterpart of what was the Regional Commissioner. The Church has thus failed to refute the IRS's initial showing it followed the required administrative steps under the Fourth *Powell* factor.

## VI.   CONCLUSION

The IRS's third-party summons to the Bank is governed by § 7609 and is not subject to the additional restrictions on church tax examinations set forth in § 7611(b)(1)(A) of the Church Audit Procedures Act, notwithstanding the fact that the summons was issued in conjunction with a church tax inquiry and examination. Under the plain language of § 7611(h)(4)(B)(i), the third-party summons issued to the Church's Bank is excepted from the statutory definition of "church records" under the exception for records acquired "pursuant to a summons to which section 7609 applies." In determining the validity of the third-party summons issued pursuant to § 7609, the

---

[86] Civ. No. 08-mc-37 (ADM/JJK), 2008 WL 5456381, at *1 (D. Minn. Nov. 18, 2008).
[87] *Id.* at *13.

four-factor test articulated in *United States v. Powell* controls. Here, the IRS has made a *prima facie* showing of good faith in issuing the summons, satisfying the four *Powell* factors and thereby meeting its initial burden. The Church has failed to meet its burden to refute the IRS's showing under any of the *Powell* factors, or establish an affirmative defense to enforcement of the third-party summons.

## **RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED THAT** the Church's Verified Petition to Quash Internal Revenue Service Third-Party Summons (ECF No. 1) be DISMISSED.

**IT IS FURTHER RECOMMENDED THAT** the Motion of the United States for Summary Denial of Verified Petition to Quash Internal Revenue Service Third-Party Summons (ECF No. 11) be GRANTED.

Respectfully submitted.

Dated this 7th day of October, 2022 at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge