## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GOD'S STOREHOUSE TOPEKA
CHURCH,

              Petitioner,

v.                               Case No. 22-4014-DDC-TJJ

UNITED STATES OF AMERICA,

              Respondent.

_____

## MEMORANDUM AND ORDER

Petitioner God's Storehouse Topeka Church filed a Verified Petition to Quash Internal Revenue Service Third-Party Summons (Doc. 1) in February 2022.  That Petition asks the court to quash a summons issued to petitioner's bank, Kaw Valley Bank in Topeka, stemming from an IRS investigation into petitioner.  Doc. 1 at 1.  The United States government, as respondent, filed a Motion for Summary Denial (Doc. 11) of petitioner's Verified Petition in May 2022.  United States Magistrate Judge Teresa J. James issued a Report and Recommendation (Doc. 15), recommending that the court grant respondent's motion and dismiss the Verified Petition.

For reasons explained below, the court adopts the reasoning of Judge James's Report and Recommendation.  It thus grants respondent's Motion for Summary Denial and dismisses petitioner's Verified Petition.

**I.      Factual and Procedural Background**

Richard and Pennie Kloos founded God's Storehouse Topeka Church in 2009.  Doc. 1 at 3 (Verified Pet. ¶ 9).  The following year, Richard Kloos and two other individuals incorporated the church as a Kansas not-for-profit corporation.  Doc. 12-1 at 2 (Henry Decl. ¶ 5).  Petitioner

didn't file an Application for Recognition of Exemption under the Internal Revenue Code (IRS Form 1023), but instead chose to self-declare as a church. *Id.* at 2–3 (Henry Decl. ¶¶ 6–8).

Petitioner operates a thrift store with a small space inside that serves as a coffee shop. *Id.* at 3 (Henry Decl. ¶ 8). The thrift store accepts donations of clothes and other items, then sells them to the public. Doc. 1 at 3 (Verified Pet. ¶ 10). The coffee shop, Judee's Coffee, sells coffee to the store's patrons at cost. Doc. 12-1 at 3 (Henry Decl. ¶ 8). Richard Kloos is a pastor at the church, which paid gross wages to both Klooses in 2019 and 2020. Doc. 13-1 at 2 (Kloos Aff. ¶ 2); Doc. 12-1 at 3 (Henry Decl. ¶ 11). Petitioner's tax forms demonstrate it withheld employment taxes from wages to other employees, but didn't withhold any taxes from the gross wages of the Klooses for those years. Doc. 12-1 at 3 (Henry Decl. ¶ 11).

In November 2020, Richard Kloos was elected to the Kansas State Senate. Doc. 13-1 at 3 (Kloos Aff. ¶ 18). While he was campaigning, his campaign purchased yard signs that included the words "Founder of God's Storehouse" below his name. *Id.* (Kloos Aff. ¶ 19). The State of Kansas Governmental Ethics Commission vetted and preapproved those signs. *Id.* Richard Kloos's affidavit asserts that God's Storehouse didn't "create, purchase, display, distribute, or in any way contribute to any yard signs associated with" his campaign. Doc. 13-1 at 3 (Kloos Aff. ¶ 20). It also states that petitioner didn't "intervene in or support [Mr. Kloos's] campaign for Kansas Senate." *Id.* (Kloos Aff. ¶ 21).

In February 2021, the IRS assigned Agent Kesroy Henry to investigate whether it should initiate a church tax inquiry into petitioner for the 2019 and 2020 tax years. Doc. 12-1 at 2 (Henry Decl. ¶ 4). That June, Agent Henry issued a Notice of Church Tax Inquiry (NCTI) to petitioner after he secured approval from Sunita B. Lough, Commissioner of the IRS's Tax Exempt and Government Entities Division (TE/GE). *Id.* at 4 (Henry Decl. ¶ 14). The NCTI

2

informed petitioner of four concerns:  (1) petitioner potentially had operated as a thrift store instead of a church, (2) it may have intervened in a political campaign impermissibly, (3) its coffee shop may incur liability for unrelated business income tax (UBIT), and (4) the wage payments to the Klooses may incur liability for unpaid Form 941 employment taxes.  *Id.*  The NCTI also requested petitioner's responses to a series of questions, but it didn't request any documents at that time.  *Id.*  Petitioner responded to the questions and provided copies of documents in July 2021.  *Id.* (Henry Decl. ¶ 15).

Agent Henry remained concerned about petitioner's tax-exempt status and potential tax liability, so he gained approval to initiate a church tax examination from Commissioner Lough in September 2021.  *Id.* at 4–5 (Henry Decl. ¶¶ 16–17).  He then issued a Notice of Church Tax Examination (NCTE) to petitioner.  *Id.* at 5 (Henry Decl. ¶ 17).  It informed petitioner about the IRS's continued concerns.  *Id.*  The NCTE also described church records and activities that Agent Henry might need to examine and an offer to conduct a pre-examination conference.  *Id.*  The following month, petitioner's representative met with IRS personnel for the pre-examination conference.  *Id.* (Henry Decl. ¶ 18).  That conference didn't resolve the IRS's concerns, so the agency notified petitioner that it would move forward with its examination.  *Id.*

A few days after the conference, Agent Henry sent petitioner a request for several documents, including copies of petitioner's bank statements between January 1, 2019, and December 31, 2020.  *Id.* (Henry Decl. ¶ 19).  Petitioner objected to producing those statements because it believed the request was overly broad.  *Id.* (Henry Decl. ¶ 20).  The church didn't provide the requested bank statements, but it included an extensive list of documents it did provide to the IRS in its Verified Petition.  *See* Doc. 1 at 11–13 (Verified Pet. ¶ 35).  In

December 2021, the IRS notified petitioner of its intent to contact third parties and petitioner's right to request a list of people the agency contacted.  Doc. 12-1 at 6 (Henry Decl. ¶ 22).

In February 2022, the IRS issued an administrative summons to Kaw Valley Bank in Topeka under 26 U.S.C. § 7609.  *Id.* at 7 (Henry Decl. ¶ 27).  It requested bank records for all accounts in petitioner's name for the period January 1, 2019 to December 31, 2020.  *Id.*  Also, the IRS served a copy of the summons to petitioner.  *Id.* (Henry Decl. ¶ 29).  That month, petitioner filed the current action.  *See* Doc. 1.  Then, in March 2022, the bank informed Agent Henry that it had collected the documents as requested, but that it would hold the documents pending resolution of petitioner's effort to quash the summons.  Doc. 12-1 at 7 (Henry Decl. ¶ 30).

Respondent filed its Motion for Summary Denial in May 2022, arguing that it "has made a *prima facie* showing of the summons' validity[.]"  Doc. 11 at 1.  On October 7, 2022, Judge James issued a Report and Recommendation recommending that the court grant respondent's motion and dismiss the Petition.  Doc. 15 at 33–34.  Judge James explained to petitioner that it could serve and file specific written objections to the Report and Recommendation within 14 days under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  *Id.* at 1.  Petitioner filed its Objection to Judge James's Report and Recommendation.  Doc. 18.  The government filed a Response, Doc. 19, and petitioner then filed a Reply, Doc. 20.

## II.    Legal Standard

### A.  Report & Recommendation

When a magistrate judge enters an Order recommending a disposition, Fed. R. Civ. P. 72(b)(2) provides that a party may serve and file specific, written objections to the magistrate judge's order "[w]ithin 14 days after being served with a copy of the recommended disposition[.]"  The rules then mandate that the district court "must determine de novo any part

4

of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  When the district court makes this determination, it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . [or] may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).

The Tenth Circuit requires that parties bring "both timely and specific" objections to a magistrate judge's recommended disposition "to preserve an issue for de novo review by the district court[.]"  *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Here, there's no dispute about timelines.  The court granted the parties' Joint Motion for Extension of Time, Doc. 17, and both parties filed their respective documents by the court's deadline, *see* Docs. 18–19.

An objection is sufficiently specific if it "focus[es] the district court's attention on the factual and legal issues that are truly in dispute[.]"  *2121 E. 30th St.*, 73 F.3d at 1060.  If a party fails to make a proper objection, the court has considerable discretion to review the recommendation under any standard it finds appropriate.  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

### B.  IRS Enforcement

The Internal Revenue Code authorizes and requires the IRS "to make the inquiries, determinations, and assessments of all taxes" under the tax code.  26 U.S.C. § 6201(a).  The IRS retains "broad latitude" granted by Congress "to issue summonses '[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . , or collecting any such

liability.'"  *United States v. Clarke*, 573 U.S. 248, 250 (2014) (quoting 26 U.S.C. § 7602(a)).

The summons authorizes the IRS to "examine any books, papers, records, or other data" relevant

to the inquiry.  26 U.S.C. § 7602(a)(1).  The IRS may "issue summonses to the subject taxpayer

and to third parties who may have relevant information."  *Standing Akimbo, LLC v. United States

ex rel. IRS*, 955 F.3d 1146, 1154 (10th Cir. 2020) [hereinafter *Standing Akimbo I*] (citing 26

U.S.C. § 7602(a)(2) (further citations omitted)).  If any summons recipient refuses to comply, the

IRS may bring an enforcement action in district court.  26 U.S.C. § 7604(a)–(b).

When the IRS issues a summons to a third party, the taxpayer retains the right to

intervene in its enforcement and petition the district court to quash the summons.  *Id.* at

§ 7609(b).  In any proceeding seeking to quash the summons, the IRS may ask the court to

compel compliance with the summons.  *Id.* at § 7609(b)(2)(A).

An IRS summons is intended "'not to accuse,' much less to adjudicate, but only 'to

inquire.'"  *Clarke*, 573 U.S. at 254 (quoting *United States v. Bisceglia*, 420 U.S. 141, 146

(1975)).  So, summons enforcement proceedings should remain "summary in nature."  *Id.*

(quotation cleaned up).  When making its determinations, the district court "may ask only

whether the IRS issued a summons in good faith, and must eschew any broader role of

overseeing the IRS's determinations to investigate."  *Id.* (quotation cleaned up).

## III.   Analysis

Here, petitioner asks to intervene in enforcement of the IRS summons served on its bank,

Kaw Valley Bank, and asks the court to quash that summons.

Petitioner filed a timely Objection to the Report and Recommendation.  For the most part,

petitioner's Objection rehashes the same arguments advanced in its Objection presented to Judge

James when it sought to convince her that the court should deny respondent's motion.  *Compare*

Doc. 18 at 7–25 (Pet'r's Obj. R. & R.), *with* Doc. 13 at 8–24 (Pet'r's Resp. Resp't's Mot. Summ.

Denial).  Judge James already has addressed those arguments thoroughly.  Principally,

petitioner's Objection differs from its original Response merely by phrasing its arguments

around the contention that Judge James misapplied the law.

Some courts have held that proper objections to a magistrate judge's report and

recommendation don't simply renew the same arguments already rejected by the magistrate.  *See*

*Sigui v. M + M Commc'ns, Inc.*, 310 F. Supp. 3d 313, 319 (D.R.I. 2018) ("While review of the

Magistrate Judge's R & R is de novo, it is not an opportunity to re-run every argument made to

the Magistrate Judge."); *United States v. Morales-Castro*, 947 F. Supp. 2d 166, 171 (D.P.R.

2013) ("Even though timely objections to a report and recommendation entitle the objecting

party to *de novo* review of the findings, the district court should be spared the chore of traversing

ground already plowed by the Magistrate." (quotation cleaned up)); *Shephard v. Sec'y, U.S.*

*Dep't of Veterans Affs.*, No. 1:18-CV-04937-CAP-AJB, 2019 WL 262786, at *3 (N.D. Ga. Jan.

3, 2019) ("The party's objections must be grounded in fact and warranted by existing law or a

good faith argument for the extension rather than a reiteration of arguments already considered

and rejected by the magistrate judge." (quotation cleaned up)).  These holdings adhere to the

principle that "filing of objections to a magistrate's report enables the district judge to focus

attention on those issues—factual and legal—that are at the heart of the parties' dispute."

*Thomas v. Arn*, 474 U.S. 140, 147 (1985); *see also 2121 E. 30th St.*, 73 F.3d at 1059 (quoting

*Thomas*, 474 U.S. at 147).

But the court need not decide the issue here on procedural nuance.  For petitioner's

arguments fail even under a rigorous de novo review, let alone a more lenient one.  This Order

gives petitioner the benefit of the doubt and treats its Objection as specific and timely,

performing a de novo review.  After reviewing the Report and Recommendation de novo, the

court finds Judge James didn't err when she recommended that the court deny petitioner's request to quash the summons. The court reaches this conclusion because petitioner hasn't shouldered its burden to demonstrate that respondent didn't act in good faith when it issued the third-party summons. The court thus affirms Judge James's reasoning and grants respondent's motion to issue a summary denial of the Verified Petition to Quash. It explains why, below.

### A. Applicability of § 7611

Petitioner first objects to Judge James's conclusion that the IRS issued its summons in the course of a valid proceeding under 26 U.S.C. § 7611. Judge James found that the IRS followed proper procedures when it initiated its examination and that the records requested from the bank fell within the statute's exception to "church records." Petitioner contends that Judge James "gloss[ed] over procedural aspects of how this investigation unfolded and the great lengths the Petitioner has taken to satisfy the IRS's concerns[.]" Doc. 18 at 1. Specifically, the procedural concerns petitioner references include the investigation's approval by an "appropriate high-level treasury official" and a letter sent to the IRS from the Freedom from Religion Foundation. The court disagrees with petitioner's contention that Judge James's Report "glossed over" any aspects of the case, but it nonetheless undertakes its own analysis of those procedural elements, below. *See infra* at 9–13, 19–20, 28–31.

The IRS may initiate a church tax inquiry only if it meets the reasonable belief and notice requirements under the statute. 26 U.S.C. § 7611(a)(1). First, "an appropriate high-level Treasury official" reasonably must believe a church "may not be exempt, by reason of its status as a church, from tax" or "may be carrying on an unrelated trade or business . . . or otherwise engaged in activities subject to taxation[.]" *Id.* at § 7611(a)(2). Then, the IRS must provide the church with written notice at the start of its inquiry that explains both its concerns that prompted the inquiry and the general subjects of its inquiry. *Id.* at § 7611(a)(3).

8

Following the inquiry, to commence a church tax examination the IRS must provide the taxpayer notice of its examination. *Id.* at § 7611(b). The IRS may conduct that examination only "(A) in the case of church records, to the extent necessary to determine the liability for, and the amount of, any tax[,]" and "(B) in the case of religious activities, to the extent necessary to determine whether an organization claiming to be a church is a church for any period." *Id.* at § 7611(b)(1). The category of "church records" applies to "all corporate and financial records regularly kept *by a church*, including corporate minute books and lists of members and contributors." *Id.* at § 7611(h)(4)(A) (emphasis added). But it doesn't include records the IRS acquires "(i) pursuant to a summons to which section 7609 applies, or (ii) from any governmental agency." *Id.* at § 7611(h)(4)(B). Section 7609 contains the procedures for third-party summonses, which the court addresses later in this Order.

Petitioner's objections that fault Judge James's finding fall into two principal groups: (1) Commissioner Lough isn't a "high-level Treasury official" for purposes of the statute; and (2) Judge James misapplied the exception for third-party recordkeepers. The court explains why both arguments fail, below.

### 1. *Appropriate High-Level Treasury Official*

Petitioner first "objects to the Report's designation of the [Tax Exempt and Government Entities (TE/GE)] Commissioner as an appropriate high-level Treasury official." Doc. 18 at 8. Petitioner presents the court with an argument substantively identical to the one it provided Judge James. *Compare* Doc. 18 at 8–10, *with* Doc. 13 at 22–23. Judge James correctly found that argument unpersuasive.

Petitioner properly asserts that "Treasury Regulations clearly state that a Regional Commissioner is an appropriate high-level Treasury official[,]" but the agency eliminated that position in 1998 and hasn't updated its regulations since. Doc. 18 at 8–9; *see also* 26 U.S.C.

§ 7611(h)(7) (defining "appropriate high-level Treasury official" as "the Secretary of the Treasury or any delegate of the Secretary whose rank is no lower than that of a principal Internal Revenue officer for an internal revenue region"); Treas. Reg. § 301.7611-1, Q&A (A-1) (1985) (providing that "the Internal Revenue Service may begin a church tax inquiry only when the appropriate Regional Commissioner (or higher Treasury official) reasonably believes" it's warranted).  Few courts have addressed the question of who currently qualifies as an appropriate high-level official after the IRS's reorganization, and the Tenth Circuit hasn't provided any guidance on this issue.  Those courts who've encountered this question have held that, whether the court takes "the perspective of closeness to the IRS Commissioner or removal from the examination function, the TE/GE Commissioner's rank is comparable to that of a former Regional Commissioner."  *United States v. Bible Study Time, Inc.*, 295 F. Supp. 3d 606, 627 (D.S.C. 2018); *see also United States v. Living Word Christian Ctr.*, Civil No. 08-mc-37 ADM/JJK, 2009 WL 250049, at *3 (D. Minn. Jan. 30, 2009) (affirming magistrate judge's finding that TE/GE Commissioner's roles "more closely aligned with those of the Regional Commissioner").

The district court in *Bible Study Time* extensively examined the TE/GE and Regional Commissioners' duties and the IRS's organizational chart, both before and after its restructuring. *See* 295 F. Supp. 3d at 621–27.  Through this examination, the court provided a sound analysis why the current position of TE/GE Commissioner corresponds to that of the Regional Commissioner used by the Treasury Regulations.  The court addressed the petitioner's arguments in that case—which parallel the same arguments made by petitioner here—that "Regional Commissioners were one rank below the IRS Commissioner and reported directly to the IRS Commissioner while the TE/GE Commissioner is two steps removed from the Commissioner of

the IRS, reporting to the Deputy Commissioner for Services and Enforcement." *Id.* at 621 (quotation cleaned up). That court determined from organizational charts submitted by the parties that it couldn't "determine whether the Regional Commissioners, in fact, reported directly to the IRS Commissioner, or through one or more intermediate officials." *Id.* at 625. Nor could the court "determine whether the legislative decision (in 1984) to make Regional Commissioners the lowest level official to whom the Section 7611 Determination could be delegated was dependent on such a direct reporting relationship." *Id.* But *Bible Study Time* also held that it "reaches a similar conclusion if it counts steps up from the examination function rather than down from the IRS Commissioner[,]" since "the TE/GE Commissioner, like Regional Commissioners in 1984 (and 1998), is two steps removed from the examination process." *Id.* at 626.

As did the petitioner in *Bible Study Time*, petitioner here argues that "at minimum, the Deputy Commissioner for Services and Enforcement should make the determination[.]" Doc. 18 at 10. Petitioner continues, suggesting that "only the Commissioner of the IRS or the Treasury Secretary" could satisfy the statute's requirements. *Id.* But the "IRS's organizational structure prior to reorganization (both as reflected in the 1984 and 1998 organization charts) placed Deputy Commissioners above Regional Commissioners." *Bible Study Time*, 295 F. Supp. 3d at 627. *Bible Study Time* held that petitioner's argument "proves too much because it would effectively replace the statutory clause 'principal Internal Revenue officer for an internal revenue region,' a clause the parties agree refers to the former Regional Commissioners, with 'Deputy Commissioner'" against Congress's clear intent. *Id.* at 625. Following petitioner's interpretation would push the approval requirement higher than the regulations require. Instead, the TE/GE Commissioner's rank compares favorably "to that of Regional Commissioner because both

appear on the organizational charts immediately outside the box containing the IRS Commissioner and Deputy Commissioners." *Id.* at 627.  Also, responsibilities of the TE/GE Commissioner are "sufficiently broad to serve the legislative purpose behind Section 7611(h)(7)'s minimum-rank requirement." *Id.*

The logic applied in *Bible Study Time* supports Judge James's finding that petitioner's "arguments are unpersuasive."  Doc. 15 at 32.  Judge James applied similar reasoning to determine that the TE/GE Commissioner fills a role comparable to the Regional Commissioner, and thus satisfies the statutory requirements for initiating a church tax inquiry under 26 U.S.C. § 7611(a)(2).  Because the Tenth Circuit hasn't ruled on this issue, and the issue presented in *Bible Study Time* closely resembles petitioner's argument here, the court finds that case's reasoning persuasive, and thus agrees with Judge James's conclusion.

Petitioner also argues that Judge James "attempts to shift the burden of proof on [the issue of an appropriate high-level official] back" on petitioner.  Doc. 18 at 11.  It contends that it's "the responsibility of the IRS—not [petitioner]—to establish that an appropriate high-level Treasury official reasonably believes in the basis for this church tax examination."[1]  *Id.* at 11–12.  But Judge James applied the correct burden of proof standard.  Judge James weighed the arguments by both petitioner and respondent, then applied the reasoning from *Bible Study Time* to those arguments.  She then concluded that respondent had made a prima facie showing that the TE/GE Commissioner is an appropriate high-level Treasury official and that petitioner "failed to refute the IRS's initial showing[.]"  Doc. 15 at 33.  The burden shifted to petitioner once respondent had satisfied its own.  As Judge James reasoned, petitioner didn't meet that burden.

---

[1]      Petitioner's reasoning here is wrong for another reason.  The IRS agent must establish a high-level Treasury official's reasonable belief to start a church tax *inquiry*.  26 U.S.C. § 7611(a)(2).  But no such requirement exists to start a church tax *examination*.  *See* 26 U.S.C. § 7611(b).

Judge James determined that the IRS properly gained approval from Commissioner Lough to begin a church tax inquiry.  Absent guidance from our Circuit, Judge James's use of the logic in *Bible Study Time*, a case analyzing a similar issue, is sound.  Petitioner's objections don't present a persuasive argument why Judge James erred.  Thus, the court adopts and affirms Judge James's holding.

### 2.   Third-Party Exception

Petitioner next argues that Judge James failed "to consider the broader context of the term 'church records' within the statute and the Treasury Regulations."  Doc. 18 at 12.  It contends that this failure led Judge James to misapply the exemption in 26 U.S.C. § 7611(h)(4)(B) and determine that the "extent necessary" restriction in § 7611(b)(1)(A) doesn't apply.

Judge James began by scrutinizing § 7611(b)(1)(A), which states the IRS may examine "'church records, *to the extent necessary* to determine the liability for, and the amount of, any tax imposed'" by the tax code.  Doc. 15 at 10 (quoting 26 U.S.C. § 7611(b)(1)(A)).  She then looked to § 7611(h)(4), which defines "church records" and prescribes an exception to records sought "'pursuant to a summons to which section 7609 applies[.]'"  *Id.*  (quoting 26 U.S.C. § 7611(h)(4)(B)(i)).  Next, she noted that § 7609 "governs the issuance and enforcement of third-party summonses by the IRS, and, pertinent here, applies to 'any summons issued under paragraph (2) of section 7602(a).'"  *Id.* (quoting 26 U.S.C. § 7609(c)).  And she then interpreted the referenced paragraph, which "authorizes the IRS to summon 'any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax,'" as referring to "a third-party recordkeeper and which includes a bank."  *Id.* at 10–11 (first quoting 26 U.S.C. § 7602(a)(2); then citing *id.* § 7603(b)(2)(A)).

This plain statutory language reveals a simple logic.  The category of church records doesn't include documents acquired via summons from third-party recordkeepers.  A bank is a

third-party recordkeeper.  Thus, the "extent necessary" restriction on church records doesn't

apply to information summoned from a taxpayer's bank.  Judge James's reasoning is simple,

direct, and—most importantly—correct.

In its Objection, petitioner advances a strained construction of § 7611, trying to

demonstrate why Judge James's straightforward reading erred.  It insists that § 7611

"consistently delineates between IRS examinations of church records for the purpose of

determining unrelated business income or other tax liability and examinations of religious

activities for the purpose of determining whether a church is a church for federal tax purposes."

Doc. 18 at 12.  It then lists several provisions of § 7611 and the Treasury regulations that, it

believes, demonstrate the text doesn't "collapse 'church records' and 'religious activities' into a

single category because the two types of materials are used for different purposes."  *Id.* at 13–14.

Petitioner appears to argue that an IRS examination can investigate either church records

*or* religious activities.  And it contends that "this case does not primarily involve an examination

of church records" but, instead, "is fundamentally seeking to determine whether 'an organization

claiming to be a church is a church for any period' by examining its religious activities."  Doc.

20 at 4–5 (quoting 26 U.S.C. § 7611(b)(1)(B)).  But petitioner presents no authority to support its

interpretation why the IRS's examination can't encompass both.  To the contrary, § 7611(b)(1)

connects the provisions describing restrictions on church tax examinations concerning church

records and religious activities with the word *and*—not *or*.  *See* 26 U.S.C. § 7611(b)(1) (stating

that "examination may be made only . . . (A) in the case of church records, to the extent

necessary . . . , *and* (B) in the case of religious activities, to the extent necessary") (emphasis

added).  And the IRS's statutory authority of the IRS allows it to "inquire after and concerning

all persons . . . who may be liable to pay *any* internal revenue tax[.]"  26 U.S.C. § 7601(a)

(emphasis added).  The Supreme Court has likened the power of the IRS to that of the grand jury, which "'is not derived from the judicial function'" and may "'investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.'"  *United States v. Powell*, 379 U.S. 48, 57 (1964) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950)).

These authorities correspond with Congress's grant of "broad latitude" for IRS investigations, *Clarke*, 573 U.S. at 250, and outweigh the confusing statutory construction petitioner offers.  Petitioner correctly observes that the statutory provisions provide two different categories of information that the IRS may summon from a taxpayer.  But the statute belies that artificial separation through its use of the word *and* to join the two avenues of inquiry.  Petitioner is also correct when stating that "this case does not primarily involve an examination of church records."  Doc. 20 at 4.  That's because this case involves a summons for bank records, which fall under the exception for "church records."  Petitioner doesn't demonstrate how these provisions relate to a third-party summons under § 7609.

In the end, petitioner's analysis fails to present any cogent argument why bank records shouldn't qualify for § 7611(h)(4)(B)'s exception.  Judge James presented a solid, plain-language reading of the statutes to conclude that the IRS's third-party summons doesn't qualify as a "church record" and isn't restricted by § 7611(b)(1)(A)'s "extent necessary" language.  Petitioner's further arguments that the bank records aren't necessary to conduct its examination, Doc. 18 at 15–16, don't matter.  The necessity language in § 7611 only applies to summonses served on the taxpayer—and not on third parties subject to the statute's exception.  *See United States v. C.E. Hobbs Found. for Religious Training & Educ., Inc.*, 7 F.3d 169, 173 (9th Cir. 1993) (recognizing that a "[b]ank summons is not governed by section 7611"); *see also Bible*

15

*Study Time, Inc. v. United States*, 240 F. Supp. 3d 409, 420 (D.S.C. 2017) ("Third-party summonses are governed by Section 7609, not Section 7611, even when the summons is issued in connection with a church tax inquiry.").

In sum, Judge James correctly concluded that the IRS summons served on the bank doesn't seek "church records," and thus the "extent necessary" restriction in § 7611(b)(1)(A) doesn't apply to it. Petitioner's Objection doesn't persuade the court that Judge James erred when reaching her conclusion. After reviewing the record de novo, the court adopts and affirms Judge James's finding that § 7611 doesn't apply to the summons at issue.

### B. *Powell* Factors

After determining that the IRS's bank summons properly fell under the third-party exception, Judge James next analyzed that summons to determine whether the agency issued it in good faith. Respondent asserts that the IRS met the requirements for a showing of good faith. In contrast, petitioner contends that respondent didn't meet its prima facie burden when it made its Motion for Summary Denial.

The Supreme Court outlined its test for determining whether the IRS issued a third-party summons in good faith under 26 U.S.C. § 7609 in *United States v. Powell*, 379 U.S. 48 (1964). *Powell*'s four factors require the IRS to demonstrate a prima facie good faith showing that: "[(1)] the investigation will be conducted pursuant to a legitimate purpose, [(2)] that the inquiry may be relevant to the purpose, [(3)] that the information sought is not already within the Commissioner's possession, and [(4)] that the administrative steps required by the Code have been followed[.]" *Id.* at 57–58; *see also Standing Akimbo, Inc. v. United States ex rel. IRS*, No. 21-1379, 2023 WL 569405, at *2 (10th Cir. Jan. 27, 2023) [hereinafter *Standing Akimbo III*] (reciting *Powell* factors).

16

Respondent's burden "in connection with these factors is slight," and the court must read the statute "broadly to ensure that the enforcement powers of the IRS are not unduly restricted." *Speidell v. United States ex rel. IRS*, 978 F.3d 731, 738 (10th Cir. 2020) (quotation cleaned up). The IRS can carry this burden "usually through an affidavit from the agent issuing the summons" to establish "the prima facie validity of the summons." *Standing Akimbo III*, 2023 WL 569405, at *2. If the IRS "provides such an affidavit, a heavy burden falls on the taxpayer to factually refute the *Powell* showing or factually support an affirmative defense." *Speidell*, 978 F.3d at 738 (quotation cleaned up). Such an affirmative defense could include a showing "that enforcement of the summons would constitute an abuse of the court's process[.]" *United States v. Wankel*, 475 F. App'x 273, 275 (10th Cir. 2012) (quotation cleaned up). That abuse of process "would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58.

Petitioner disputes Judge James's finding that Agent Henry's Declaration established each one of the *Powell* factors. The court disagrees with petitioner's challenges. Below, the court analyzes each one of the *Powell* factors, explains how the IRS met its "slight" prima facie burden, and shows how petitioner has failed to meet its "heavy" burden to refute the IRS's good faith in issuing its summons.

### 1. First Powell *Factor: Legitimate Purpose*

Judge James determined that respondent made a prima facie showing that it satisfied the first *Powell* factor—the investigation has a legitimate purpose—through Agent Henry's Declaration. Doc. 15 at 19. In particular, Agent Henry stated that the IRS summons seeks "books, papers, records, and other data" from Kaw Valley Bank:

> to determine whether [p]etitioner was operating as a thrift shop rather than as a church or . . . whether [p]etitioner may have engaged in prohibited political campaign intervention in 2020, may have unrelated business income and therefore may be liable for UBIT from the operation of a coffee shop in 2019 and 2020, and may be liable for additional Form 941 employment taxes for wages paid to Mr. and Mrs. Kloos in 2019 and 2020.

Doc. 12-1 at 8 (Henry Decl. ¶ 33). Judge James noted that these purposes "are clearly consistent with the IRS's duty and authority 'to make the inquiries, determinations, and assessments of all taxes'" under the tax code. Doc. 15 at 19 (quoting 26 U.S.C. § 6201(a)).

Petitioner argues that respondent "lacks 'facts and circumstances recorded in writing' suggesting that [petitioner] is not a church, that [petitioner] engaged in political campaign intervention, or that [petitioner] may have other tax liabilities." Doc. 18 at 16–17 (quoting 26 U.S.C. § 7611(a)(2)). The statutory language petitioner cites comes from the provision describing the IRS's obligation when starting a church tax inquiry, not the one that applies when issuing a third-party summons. By raising it here, petitioner attempts to apply the standard that "the Government must establish probable cause for suspecting fraud" when issuing a third-party summons. *Powell*, 379 U.S. at 52. But the Supreme Court has rejected this standard "because it might seriously hamper the [IRS] in carrying out investigations [it] thinks warranted, forcing [it] to litigate and prosecute appeals on the very subject which [it] desires to investigate[.]" *Id.* at 53–54.

Instead, the standard for the first *Powell* factor derives from § 7602. *See id.* at 53 (holding that if "a taxpayer has filed fraudulent returns, . . . Section 7602 authorizes the [IRS] to investigate any such liability"). Under that statute, the purposes for which the IRS can summon "any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax" shall "include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws." 26

U.S.C. § 7602(a)(2), (b).  Agent Henry's Declaration lists four potential offenses his office is investigating:  (1) whether petitioner operated a thrift shop rather than a church, (2) whether petitioner engaged in prohibited campaign intervention, (3) whether petitioner bears liability for UBIT from its coffee shop, and (4) whether petitioner bears liability for unpaid employment taxes.  Doc. 12-1 at 8 (Henry Decl. ¶ 33).  And all the stated purposes relate to petitioner's potential tax liability.  Petitioner's arguments that these purposes shouldn't qualify as proper ones under § 7602(b) don't persuade the court.

Petitioner contends that, because Mr. Kloos's political opponent suggested in a newspaper article that Mr. Kloos's "use of the name of the church on his yard signs may be impermissible[,]" the IRS's investigation into prohibited political campaign intervention would "permit the IRS to be used for naked political gain."  Doc. 18 at 18.  In a related argument, petitioner asserts that a letter sent to the IRS by the Freedom from Religion Foundation (FFRF) "is credible evidence supporting [p]etitioner's charge that this examination is based on an improper purpose."  *Id.* at 19.  Petitioner cites *Clarke* to argue that this evidence is sufficient to establish bad faith.  *See id.* (citing *Clarke*, 573 U.S. at 255).  But petitioner's proffered evidence doesn't meet the standard provided in *Clarke*.

In *Clarke*, the Supreme Court held that a "taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive" to demonstrate bad faith.  573 U.S. at 254.  When presenting these facts, "circumstantial evidence can suffice to meet that burden" since "direct evidence of another person's bad faith, at this threshold stage, will rarely if ever be available."  *Id.*  But "[n]aked allegations of improper purpose are not enough[.]"  *Id.*

Here, petitioner's evidence doesn't support a plausible inference that the IRS possessed an improper motive.  Neither Mr. Kloos's election opponent nor the FFRF initiated the

investigation into petitioner's activities—the IRS did.  Petitioner adduces no evidence to demonstrate why the court should transfer the possible motivations of Mr. Kloos's political opponent or an independent organization onto the IRS's decision to conduct its inquiry.  Judge James noted that petitioner alleges the "'church examination was initiated at the behest of Pastor Kloos'[s] political opponents through the FFRF'" and did so "'*upon information and belief*[.]'" Doc. 15 at 21 (citing Doc. 1 at 16 (Verified Pet. ¶ 49)).  Petitioner objects to Judge James's conclusion that the "allegation is sheer supposition and not sufficient to meet [petitioner's] burden to show an improper IRS purpose" as the reason she "reject[ed] [petitioner's] speculation out of hand."  *Id.*

But Judge James is correct.  Nothing petitioner has presented merits a plausible inference that the IRS carried out its investigation because of someone else's political motivation.  Its evidence doesn't demonstrate that Agent Henry or anyone else at the IRS acted with a political motive.  And as Judge James observed, the potential issues with Mr. Kloos's campaign signs "were a matter of public record as publicized in newspapers" and available online.  *Id.*  Petitioner hasn't cited any authority that requires—or even allows—the court to decide that, when a party's political opposition alerts the IRS to a publicly available issue, the IRS then inherits that opposition's political motivation.  Judge James rightly classified petitioner's allegation as "sheer supposition" and rejected its argument.  *Id.*

Petitioner also argues that Judge James failed to "view the record in the light most favorable to the taxpayer" and "ignore[d] facts contained in Pastor Kloos's Affidavit and the Verified Petition[.]"  Doc. 18 at 21–22.  It contends that Judge James instead "resolve[d] numerous inferences in favor of the Internal Revenue Service without basis."  *Id.* at 22.

Our Circuit has held that, when the court considers "something outside the pleadings (*i.e.*, [an IRS agent's] declaration) . . . the IRS's motion to dismiss 'must be treated as one for summary judgment under Rule 56.'" *Standing Akimbo I*, 955 F.3d at 1155 (quoting Fed. R. Civ. P. 12(d)).  When it applies that standard, the court "will view the record in the light most favorable to the [t]axpayers and ask whether the IRS has shown that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Id.* at 1156 (quotation cleaned up).  Since the "substantive law at issue determines which facts are material in a given case, the substantive rubric that the Supreme Court defined in *Powell* is of central importance in [a court's] determination of whether there are genuine disputes of material fact[.]" *Id.* (quotation cleaned up).  The "traditional summary-judgment standard of review precludes the [t]axpayers from resting on conclusory statements because such statements do not suffice to create a genuine issue of material fact." *Id.* (quotation cleaned up).

Petitioner argues that Judge James failed to acknowledge several "facts" in Mr. Kloos's affidavit, but none of these statements created a dispute of material fact that negates the IRS's prima facie showing of good faith.[2]  For instance, several of the statements argued by petitioner involve the very issues the IRS intends to investigate.  Petitioner argues that Judge James didn't include facts about the church's operation, that Pennie Kloos functioned as a pastor, that it received the thrift store items as a donation, and that the coffee shop is non-commercial in nature.  Doc. 18 at 22–23.  But in a summons enforcement action, the court can't force the IRS "to litigate and prosecute appeals on the very subject which [it] desires to investigate[.]"  *Powell*, 379 U.S. at 54; *see also United States v. Bisceglia*, 420 U.S. 141, 146 (1975) ("The purpose of

---

[2]      In addition to the statements included below, petitioner also argues that Judge James "incorrectly state[d] that the IRS is not in possession of the campaign finance records." Doc. 18 at 23. Because this issue doesn't matter to the first *Powell* factor, the court addresses it later in this Order, when it analyzes the third *Powell* factor to determine if the IRS possessed the records it requested in the summons. *See infra* Part III.B.3.

the statutes is not to accuse, but to inquire."); *United States v. White*, 853 F.2d 107, 116 (2d Cir. 1988) (holding that court's function "is not to test the final merits of the claimed tax deduction, but to assess within the limits of *Powell* whether the IRS issued its summons for a legitimate tax determination purpose").  So, if the court were to do what petitioner proposes, *i.e.*, treat these statements as true and use them to determine that the IRS lacked a legitimate purpose, it would overstep the role it plays at this stage.  The court respectfully declines petitioner's invitation to evaluate the outcome of the IRS's investigation.  The only issue now is whether the court should quash a summons.  When executing its role to decide that issue, the court "may ask only whether the IRS issued a summons in good faith, and must eschew any broader role of overseeing the IRS's determinations to investigate."  *Clarke*, 573 U.S. at 254 (quotation cleaned up).

Petitioner also argues that Judge James "failed to find that the FFRF, itself, asserted that it sent a [l]etter to the IRS based on posting it on their own website."  Doc. 18 at 23.  But as the court has held already, this fact doesn't matter to *Powell*'s first factor.  Judge James didn't neglect to consider this fact as true.  Judge James simply didn't give it any weight when determining whether the IRS conducted its investigation according to a legitimate purpose.  It simply isn't relevant.  And Judge James didn't err by reaching this conclusion.  As the court already has concluded, petitioner hasn't given the court any reason to infer the FFRF letter had any effect on the IRS's decision to initiate its examination, or to issue the summons at the center of these proceedings.

Finally, petitioner argues, Judge James "failed to acknowledge that the landing page of [petitioner's] website invites the public to 'Join us at Bible study.'"  *Id.* at 22.  Instead, petitioner asserts, Judge James relied "on Agent Henry's Declaration that '[petitioner's] website did not reveal any information about church services, such as dates and times of meetings, a list of

ministers, statements of creed, religious publications, or religious education . . . [and] did not reveal any information about [petitioner] holding church services.'" *Id.* (quoting Doc. 15 at 2).

Once again, nothing in the Report and Recommendation suggests Judge James didn't consider this statement true. But petitioner doesn't demonstrate how its statement—accepted as true—contradicts the statement from Agent Henry's Declaration, let alone how it shoulders petitioner's heavy burden to rebut respondent's prima facie showing that its inquiries had a legitimate purpose. The website's lack of the information, as listed in Agent Henry's Declaration, contributed to the IRS's "concerns that [petitioner] was operating as a thrift shop rather than as a church, may have engaged in prohibited political campaign intervention in 2020, may be liable for unrelated business income tax . . . , and may be liable for additional Form 941 employment taxes[.]" Doc. 15 at 4. The court isn't surprised that a single "pop-up banner inviting all visitors to 'Join us in Bible study' with an email address for visitors to obtain more details" failed to assuage the IRS's concerns. Doc. 18 at 18. Even taking as true petitioner's statement about the pop-up banner and casting it in the light most favorable to petitioner, it won't overcome respondent's prima facie showing.

In sum, Judge James correctly concluded that respondent made a prima facie showing that the IRS conducted its investigation according to a legitimate purpose, and that petitioner failed to meet its burden to rebut that prima facie showing.

### 2.  *Second* Powell *Factor:  Relevance*

The second *Powell* factor requires respondent to make a prima facie showing that its inquiry into the bank's records may have relevance to its investigation's purpose. In his Declaration, Agent Henry testified:

> The books, papers, records, and other data sought by the summons may be relevant to determine whether Petitioner was operating as a thrift shop rather than as a

> church or whether Petitioner may have unrelated business income and therefore
> may be liable for UBIT.  Further, the information may be relevant to identify bank
> accounts used by Petitioner.   Identifying bank accounts used by Petitioner in
> turn may also be relevant to determine whether Petitioner may have engaged in
> prohibited political campaign intervention in 2020, may have unrelated business
> income and therefore may be liable for UBIT from the operation of a coffee shop
> in 2019 and 2020, and may be liable for additional Form 941 employment taxes for
> wages paid to Mr. and Mrs. Kloos in 2019 and 2020.

Doc. 12-1 at 8 (Henry Decl. ¶ 33).  Judge James determined this statement supported

respondent's prima facie burden to meet the second *Powell* factor "[u]nder the 'slight' burden

standard imposed on the IRS for enforcement of the summons . . . for all categories of records

sought in the summons."  Doc. 15 at 29.

In its Objection, petitioner contends that "the bank records sought will not throw light on

the examination's purposes[.]"  Doc. 18 at 19–20.  In particular, petitioner argues that neither

"the IRS nor the Report offer any explanation as to how [petitioner's] bank records might throw

light as to whether Rick and Pennie Kloos are pastors and whether [petitioner] properly withheld

employment taxes."  *Id.* at 20.  But petitioner quickly answers its own argument when it notes

the letter it received from Agent Henry.  In that letter, Agent Henry stated that the "review was

necessary to determine, 'whether any fringe benefits made to Pennie and Richard Kloos' may

have existed or whether there was 'personal use of automobiles, houses, other assets that should

have been included as compensation, [or] loans or liabilities that may be compensation to Pennie

and Richard Kloos.'"  *Id.*  The letter, using plain language, showed that the IRS sought to make a

determination whether benefits provided from petitioner to the Klooses should have counted as

compensation or wages for tax purposes.  This inquiry directly connects to respondent's stated

purpose to determine whether petitioner incurred liability "for additional Form 941 employment

taxes for wages paid to Mr. and Mrs. Kloos in 2019 and 2020."  Doc. 12-1 at 8 (Henry Decl.

¶ 33).

Petitioner also contends that "neither the IRS's fourteen criteria for church status or the Tax Court's associational test involve an examination of a church's finances[,]" but that Judge James accepted "the IRS speculation that [petitioner's] bank records may show whether [petitioner] received regular tithes or expended funds consistent with services such as baptisms or weddings."  Doc. 18 at 20.  But as Judge James noted, "the IRS is examining whether [petitioner] operates as a thrift store *instead* of a church[,]" which is a legitimate purpose for an IRS investigation.  Doc. 15 at 24.  Inspecting petitioner's bank records to determine whether— and what percentage of —its income derived from the thrift store may relate to the IRS's legitimate purpose.

Petitioner again attempts to impose § 7611(a)'s reasonable belief requirements onto this analysis when it contends that "Agent Henry has no reasonable belief that any of these activities occurred, but he is determined to investigate all [petitioner's] bank records to see if he can identify any form of tax liability."  Doc. 18 at 20.  But that standard applies to the Treasury official's reasonable belief to begin a church tax inquiry, not to the agent's issuing a third-party summons in good faith during an examination.  Petitioner's attempt to interject this burden into these proceedings tries, once again, to raise the standard here to one of probable cause, which the Supreme Court already rejected in *Powell*.  379 U.S. at 52–54.  And petitioner's theory of Agent Henry's motive merely restates the IRS's investigatory authority under the law.  *See* 26 U.S.C. § 7602(a) (stating that when "determining the liability of any person for any internal revenue tax[,]" the IRS can summon "any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax").  Accusing the IRS of performing its statutory duty doesn't persuade the court that Judge James erred when issuing her Report and Recommendation.

In sum, Judge James correctly determined that respondent met its prima facie burden to demonstrate the second *Powell* factor—that its inquiry into the bank records may have relevance to its legitimate investigatory purpose—and that petitioner failed to rebut that showing.

### 3.   Third *Powell Factor:  Items Not Within the IRS's Possession*

The third *Powell* factor requires respondent to make a prima facie showing that the IRS doesn't possess the information it seeks already.  Judge James determined respondent met this prima facie burden.  Agent Henry's Declaration states that the "books, papers, records, and other data sought by the summons are not in the possession of the IRS."  Doc. 12-1 at 7 (Henry Decl. ¶ 32).  Judge James also noted that petitioner "admits it has declined to provide the summoned financial records and does not refute or contest Agent Henry's statements."  Doc. 15 at 29.

Petitioner's Objection offers the same arguments that Judge James rejected in her Report and Recommendation.  It contends that it "has provided ample evidence to show that both Rick and Pennie Kloos are pastors[.]"  Doc. 18 at 20.  It also argues that Judge James "incorrectly states that the IRS is not in possession of the campaign finance records."  *Id.* at 23.  But as Judge James concluded, none of this other information matters to the summons at issue here.  Our Circuit has held that, even when a taxpayer argues it has "already produced 'voluminous' records for [the IRS's] inspection," that fact "does not rebut the IRS's showing that it does not possess the information summoned."  *Standing Akimbo I*, 955 F.3d at 1160.  Thus, the information petitioner already provided to the IRS doesn't affect the IRS's showing that it doesn't possess the information in the summons.

In sum, Judge James correctly concluded that respondent met its prima facie burden on the third *Powell* factor.  The IRS has established that it doesn't possess the bank's records, and petitioner failed to contradict that showing.

#### 4.   *Fourth* Powell *Factor:  Administrative Steps*

Finally, respondent must satisfy the fourth *Powell* factor by demonstrating it has followed the proper administrative steps.  In particular, this factor requires respondent to show that the IRS, "after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect."  *Powell*, 379 U.S. at 58.  The IRS is bound by the procedures in § 7602(c)(1) requiring it to provide "notice which . . . informs the taxpayer that contacts with persons other than the taxpayer" will occur.  It also requires the IRS to make those contacts within a year and that the IRS provide notice "to the taxpayer not later than 45 days before the beginning of such period."[3]  *Id.*

Agent Henry's Declaration testifies that the IRS followed all administrative steps before issuing the summons.  Doc. 12-1 at 8 (Henry Decl. ¶ 35).  He also testifies that "on December 7, 2021, [he] sent IRS Letter 3164-E to [p]etitioner's representative advising him of the IRS's intent to contact third parties as part of the IRS's examination and [p]etitioner's rights with respect to the IRS's contacts with third parties."  *Id.* at 6 (Henry Decl. ¶ 22).  That letter listed the contact period as January 22, 2022–January 22, 2023.  *Id.* at 10 (Henry Decl. Ex. 1).  Agent Henry then "issued an IRS administrative summons to Kaw Valley Bank"  and served it on February 8, 2022.  *Id.* at 7 (Henry Decl. ¶¶ 27–28).  Judge James determined that respondent met its prima facie burden by Agent Henry's statement that he followed all procedural steps.  But Agent Henry also demonstrated himself that he met the procedural steps listed in § 7602.  He served petitioner with notice that the IRS intended to contact third parties.  And he did so more

---

[3]        Judge James's Report and Recommendation cited the prior version of § 7602(c)(1).  Congress enacted a new version on July 1, 2019, which added these time requirements.  Even though Judge James cited the former version of the law, that inadvertence doesn't nullify her conclusion because the IRS has made its prima facie showing that it satisfied its requirements under the current version of the statute.

than 45 days before the one-year contact period began. Thus, the court affirms Judge James's finding that respondent had satisfied its prima facie burden for the fourth *Powell* factor.

Judge James's Report and Recommendation already addressed and rejected the arguments petitioner offers in its Objection.[4]  Petitioner argues that the IRS didn't follow proper procedures because it didn't provide the FFRF letter when it gave notice. In its original arguments to Judge James, petitioner contended that the IRS needed to supply that letter to comply with statutory procedures when it sent petitioner notice of its intent to begin a church tax examination. Doc. 15 at 30–32. These procedural steps correspond with the notice required when the IRS commences a church tax examination under 26 U.S.C. § 7611. As the court has concluded already, the requirements for a third-party summons are governed by § 7609, not § 7611. *See supra* Part. III.A.; *see also C.E. Hobbs Found.*, 7 F.3d at 173 (holding that a bank summons isn't governed by § 7611). The procedures petitioner invokes aren't the same ones mandated by § 7609 or the analysis required under *Powell*'s fourth factor.

But Judge James nonetheless analyzed the fourth *Powell* factor using those § 7611 requirements. *See* Doc. 15 at 30–32. Under § 7611, when the IRS begins a church tax examination, its notice must include several documents, among others "a copy of all documents which were collected or prepared by the Internal Revenue Service for use in such examination and the disclosure of which is required by the Freedom of Information Act[.]" 26 U.S.C. § 7611(b)(3)(A)(iv). Judge James concluded that the IRS didn't need to attach the letter for two reasons: (1) since petitioner's potential political interference was reported publicly, the letter

---

[4]     Petitioner reintroduces its high-level official argument when objecting to Judge James's finding that the IRS met its obligations to follow administrative steps under 26 U.S.C. § 7609. Doc. 18 at 21. But the requirement that the IRS gain approval from a high-level official doesn't appear in § 7609. The statutes only require a high-level official's approval to initiate a church tax inquiry. 26 U.S.C. § 7611(a)(2). Determining whether the TE/GE Commissioner qualifies as a high-level official doesn't matter to the § 7609 analysis, so the court declines to address this question in this Order.

wasn't necessary to prepare the examination, and (2) regulations permit the IRS to place restrictions on the information it provides that could identify or disclose the existence of informants.  Doc. 15 at 31–32.  Petitioner then based its Objection on that analysis.  It argued that the FFRF letter qualified as a document that the IRS collected to use in its examination.  It also objected to Judge James categorizing the FFRF as an informant.  But even imposing the requirements from § 7611 on the IRS, petitioner's argument doesn't meet its burden to overcome respondent's prima facie showing that it satisfied the fourth *Powell* factor.

Petitioner contends Judge James erred by classifying of the FFRF as a confidential informant because the organization publicly posted the letter on its website.  Doc. 18 at 21.  But petitioner doesn't cite any authority to support its contention.  The court couldn't locate any authority concerning the issue of informants in the context of IRS investigations, nor did respondent cite any.  Instead, the court looked to another context—criminal law—in which it has decided questions about disclosure of informants.  While disclosing informants within the criminal informant context involves distinctly different stakes, a core principle emerges that logically applies to the matter at issue here:  namely, that disclosing the identity of informants—even ones known to adverse parties—risks restricting the flow of crucial information to investigators about potential wrongdoing.  To that end, our court has held that disclosure of an informant involves "'balancing the public interest in protecting the flow of information against the individual's right to prepare his defenses[,]'" even when the informant's identity is known.  *United States v. Ridley*, 814 F. Supp. 992, 996 (D. Kan. 1993) (quoting *Roviaro v. United States*, 353 U.S. 53, 62 (1957)).

The government must disclose an informant's identity when he "is an active participant and the only witness to significant portions of the alleged . . . activity besides the [individual] or

the government's agent[.]" *Id.* (citations omitted). "'Otherwise, disclosure is mandated only when the [individual] is able to point to concrete circumstances sufficient to overcome the public interest in encouraging the flow of confidential information[.]'" *Id.* (quoting *United States v. Batista-Polanco*, 927 F.2d 14, 19 (1st Cir. 1991)). The party seeking to produce the informant's identity bears the burden of establishing through evidence that the law favors disclosure, and must rely on "[m]ore than suspicion or speculation." *Id.* (citations omitted).

While the context of enforcing an IRS summons diverges substantially from a criminal case, the core principle disfavoring disclosure persists. To support its position, petitioner must demonstrate that its interest in preparing its own defense outweighs the public interest in safeguarding the process for whistleblowers to provide information to the government. In "a tax system based on self-reporting[,]" the IRS's investigatory tools—including its ability to receive reports from people with information about others' wrongdoing—serve as "a crucial backstop[.]" *Clarke*, 573 U.S. at 254. Since the issue of petitioner's potential campaign interference appeared in the newspaper, the FFRF was far from the only witness to that claim. And—as the court has concluded already—petitioner has adduced no evidence to demonstrate that the FFRF played any role in the IRS's decision to initiate its examination. Instead, it merely speculates that FFRF played such a role. Petitioner also hasn't shown that the IRS's omitting the letter in its notice harms petitioner's right or ability to prepare its defenses, since petitioner already has conceded that the FFRF made its letter publicly available. In contrast, if this court requires the IRS to include informants' statements in its examination notices to taxpayers under investigation—even those informants who later identify themselves publicly—such a holding would threaten to obstruct the flow of information from informants. That position potentially could impede the IRS's ability "to prevent dishonest persons from escaping taxation thus shifting heavier burdens

to honest taxpayers." *Bisceglia*, 420 U.S. at 146.  Thus, Judge James correctly determined that the IRS didn't need to supply FFRF's letter with its notice letter.

In sum, the court agrees with Judge James's finding that respondent met its prima facie burden to satisfy the fourth *Powell* factor by demonstrating that it met the necessary administrative steps.  Petitioner failed to refute that showing.

### 5.   Conclusion

Judge James determined that respondent successfully met its prima facie burden to demonstrate good faith by satisfying all four *Powell* factors.  Doc. 15 at 34.  She also found that petitioner had failed to shoulder its heavy burden to refute petitioner's good faith showing under any of the *Powell* factors.  After reviewing Judge James's Report and Recommendation de novo, the court affirms her report and now adopts its finding that respondent satisfied the *Powell* factors.

### C.  Other Matters

In its Objection, petitioner closes with an argument—already addressed and rejected by Judge James in her Report and Recommendation—before it raises a new request.  The court affirms Judge James's finding and denies petitioner's request, below.

*First*, it argues that Judge James's reasoning means "the IRS can neatly circumvent the necessity requirements in § 7611(b), rendering this section almost completely superfluous." Doc. 18 at 24.  Judge James rejected this argument, stating that "the IRS is *permitted access to* records summoned from a third party without meeting the requirements of the church audit procedures[,]" but "if the IRS seeks to *use* the third-party materials—to determine the church is not entitled to an exemption or to assess tax for unrelated business income—then the IRS must comply with specific church audit procedures."  Doc. 15 at 15–16.  In other words, the IRS may not reach conclusions and determine tax liability based solely on information acquired from

31

third-party sources unless it complies with the audit procedures under § 7611.  Judge James found that accepting petitioner's argument "would render the express exclusion of records acquired pursuant to a third-party summons from the definition of a 'church record' in § 7611(h)(4)(B)(i) superfluous."  *Id.* at 17.

Petitioner concedes that the statute prohibits the IRS from circumventing church audit procedures.  But then it asks, "what is to stop the IRS from doing just that?"  Doc. 18 at 25.  This isn't an issue for the court—and certainly not here, not now.  The court could extend petitioner's question—what prevents an agency from violating procedural requirements—to almost any statutory framework.  If the court were to decide this dispute based on this argument, it would issue, in effect, an advisory opinion.  That is something the court can't do.  *See United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 89 (1947) ("As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions.").

But the court doesn't need to answer petitioner's question.  Here, the IRS complied with the church audit procedure requirements, then followed the administrative requirements before issuing a summons to Kaw Valley Bank.  Petitioner's hypothetical doesn't apply to the case before the court, and thus doesn't persuade the court that Judge James's Report and Recommendation erred.

*Second*, petitioner asks the court to deny respondent's motion and allow limited discovery into its allegations about the IRS's improper purpose based on the FFRF letter.  Generally, "discovery is available in summons enforcement proceedings only in extraordinary situations."  *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1445 (10th Cir. 1985) (quotation cleaned up).  Petitioner hasn't adduced any evidence to show an extraordinary situation.  In any case, "arguments and claims raised for the first time in an objection to a

magistrate judge's report and recommendation are waived." *Reyes v. Larimer Cnty.*, 796 F. App'x 497, 499 (10th Cir. 2019). Petitioner never made this request before filing its Objection to the Report and Recommendation. Thus, petitioner's effort to seek limited discovery in its Objection doesn't meet the procedural requirements provided by our Circuit, and the court denies its request.

## IV.    Conclusion

The court isn't persuaded by any of petitioner's Objection. Finding Judge James's Report and Recommendation legally sound and well-reasoned, the court adopts it and grants respondent's Motion for Summary Denial. The court thus denies petitioner's Verified Petition to Quash Internal Revenue Third-Party Summons (Doc. 1).

**IT IS THEREFORE ORDERED BY THE COURT THAT**, having conducted a de novo review, the Report and Recommendation issued by United States Magistrate Judge Teresa J. James on October 7, 2022, (Doc. 15) is **ADOPTED and AFFIRMED.**

**IT IS FURTHER ORDERED BY THE COURT THAT** respondent's Motion for Summary Denial (Doc. 11) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** petitioner's Verified Petition to Quash Internal Revenue Service Third-Party Summons (Doc. 1) is dismissed. The court directs the Clerk of the Court to issue Judgment and close the case.

**IT IS SO ORDERED.**

**Dated this 24th day of March, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

33